# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1620

_____

United States of America,     *
    *
       Appellee,     *
    *   Appeal from the United States
    v.     *   District Court for the
    *   Eastern District of Missouri.
Willie C. Johnson,     *
    *
       Appellant.     *

_____

Submitted: December 15, 2005
Filed:  March 13, 2006

_____

Before WOLLMAN, LAY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Willie C. Johnson (Johnson) appeals his convictions for conspiracy to distribute fifty grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for distribution of and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Johnson argues the district court[1] erred by permitting a government witness to testify under Federal Rule of Evidence 404(b), and the evidence was insufficient to convict.  We affirm.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

## I. BACKGROUND

In July 2003, law enforcement agents from Missouri's Bootheel region suspected illegal drug activity in an area of Steele, Missouri, called "the corners." The agents engaged Walter Robinson Jr. (Robinson) to become a confidential informant. On July 24, the agents equipped Robinson with recording devices and sent him to "the corners" to attempt to purchase a $20 rock of crack cocaine using a prerecorded $20 bill. Robinson eventually began a conversation with Johnson, who was at "the corners," telling Johnson he was seeking a "twenty" rock of crack cocaine. Johnson told Robinson to wait while he made a phone call. When Johnson completed the call, he told Robinson to follow him in his car. Robinson followed Johnson to a trailer home on Smith Street.

Upon arriving, Johnson introduced Robinson to Charles Davis (Davis), told Davis to "take care of" Robinson, then left. Davis and Robinson entered the trailer and went to a rear bedroom, where Davis sold Robinson a "twenty" rock of crack cocaine from a plastic baggie. Robinson then left and reconvened with law enforcement agents, where the agents collected the drugs, reviewed the audio and visual recordings Robinson secretly made, and recognized Johnson. Robinson overheard one of the agents refer to Johnson as "Willie." The agents instructed Robinson to return to "the corners" to attempt another purchase.

Later that day, Robinson returned to the area and met with Johnson. When Robinson told Johnson he wanted more drugs, Johnson told him to return to the Smith Street trailer and speak with Davis. Robinson asked Johnson to lead him there again, inadvertently referring to Johnson as "Willie." Upon arriving at the trailer, Johnson and Davis began to question Robinson how he knew Johnson's first name. The three eventually went to the trailer's rear bedroom, where Johnson and Davis continued to question Robinson, suspecting him of being an informant. Overhearing this through Robinson's recording device, the agents entered the trailer. Upon the agents' arrival, Robinson witnessed Johnson retrieve a plastic baggie from his pocket and throw it on the bedroom floor. Robinson told the agents what he saw.

Agents arrested and searched all of the occupants, including Berter Mae Joyner (Joyner), who was in the living room. Agents found the prerecorded $20 bill on Davis. Joyner, the trailer's lessee and Davis's girlfriend, granted permission to search the trailer. Agents located a small plastic baggie with several "twenty" rocks of crack cocaine lying on the floor of the rear bedroom, a purse on a closet shelf in the same bedroom containing another chunk of crack cocaine, and some small scales located in the closet.

Before Johnson's trial, Davis pled guilty to conspiring with Johnson to distribute crack cocaine, and agreed to cooperate with the government and testify against Johnson. At trial, Davis testified Johnson called him before Johnson and Robinson arrived at his trailer on July 24, 2003. Regarding the contraband found in the trailer, Davis stated (1) the plastic bag of crack cocaine belonged to him, (2) the day before his arrest he had obtained from Johnson the chunk of crack cocaine found in the closet, and (3) the scales found in the closet were left there by Johnson. Davis further testified he purchased crack cocaine from Johnson and later sold it to others, paying Johnson only after Davis sold it. Davis stated he distributed crack cocaine for Johnson for eighteen to twenty months from 2002 to July 24, 2003. Davis testified the normal amount of crack cocaine he received from Johnson was one-quarter ounce once or twice per month.

Before trial, the government provided Johnson with notice of its intention to introduce under Rule 404(b) the testimony of Torrell Nelson (Nelson) regarding previous crack cocaine transactions between Nelson and Johnson to demonstrate Johnson's knowledge, intent, or absence of mistake. Johnson objected, but the district court ruled Nelson's proffered testimony was admissible.

At trial, the district court gave a limiting instruction before Nelson's testimony, after which Nelson testified to purchasing crack cocaine from Johnson intermittently from 1998 to 2003. Nelson further testified, while in Davis's trailer, he had observed

crack cocaine in the possession of Davis and Johnson. Nelson stated he knew Davis and Johnson had a working relationship. After Nelson finished testifying, the district court gave the jury another limiting instruction, advising the jury to consider Nelson's testimony only for purposes of Johnson's "knowledge, intent, or absence of mistake or accident."

Johnson's trial took place shortly after the Supreme Court decided Blakely v. Washington, 542 U.S. 296 (2004), but before this court provided guidance to district courts on the implications of Blakely and the Supreme Court's later decision in United States v. Booker, 543 U.S. 220 (2005). See United States v. Pirani, 406 F.3d 543 (8th Cir.) (en banc), cert. denied, 126 S. Ct. 266 (2005). As such, the district court included special jury instructions requiring the jury to find whether the government proved its allegation of fifty grams or more of cocaine base in the conspiracy charge, as well as other special instructions regarding Johnson's alleged role in the charged offenses (relevant to certain sentencing enhancement factors added by the government to the superseding indictment post-Blakely).

With this in mind, the government's closing argument included the following statements regarding Nelson's testimony:

> I have the responsibility of having additional time that I can split to talk about the testimony of Davis and Torrell Nelson with regard to the amounts involved and as to your special findings concerning the defendant's role in the offense.
> . . . .
> . . . I submit to you that if part of the defense or doubt that you're supposed to consider is that one of the co-defendants, conspirators, was smoking, then let's consider all of the evidence concerning not only the crack cocaine that was there, but the crack cocaine that Mr. Davis possessed for the benefit of his co-conspirator, the defendant, Willie Johnson, that he testified to, and even the testimony of Torrell Nelson concerning the other crack cocaine involved in this case.

. . . .

Now, ladies and gentlemen of the jury, again with regard to Torrell Nelson, because we are asking–[w]ith regard to the other instructions, ladies and gentlemen of the jury, the judge is going to give you a verdict concerning other special findings that you have to make and as a–[i]n support of that–remember the testimony of Torrell Nelson with regard to over 560 grams if you add everything up during that time period for the distribution by the defendant.

Johnson did not object to the government's statements.

A jury convicted Johnson of conspiracy to distribute fifty grams or more of cocaine base, and distribution of and possession with intent to distribute cocaine base. The jury also found (1) the total quantity for which Johnson was responsible in the conspiracy was at least 150 grams but less than 500 grams; (2) Johnson's role was that of an organizer, leader, manager, or supervisor; and (3) Johnson willfully attempted to obstruct justice during the investigation or prosecution. The district court sentenced Johnson to thirty years' imprisonment on the conspiracy count, twenty years' imprisonment on the distribution count, and twenty years' imprisonment on the possession count, to be served concurrently, as well as a concurrent term of supervised release of five years on the first count and three years on each of the remaining counts. Johnson appeals his convictions, arguing the district court abused its discretion in permitting Nelson to testify to Johnson's prior bad acts, and the evidence was insufficient to convict on any of the three counts.

## II.    DISCUSSION
### A.    Rule 404(b) Evidence
Johnson argues the district court erred in permitting Nelson to testify about his past dealings with Johnson, and the government improperly encouraged the jury to ignore the district court's limiting instruction regarding Nelson's testimony. We disagree.

Federal Rule of Evidence 404(b) bars use of a defendant's prior bad acts as character evidence, but permits such evidence to prove other factors such as the defendant's motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.[2] It is a rule of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination. United States v. Hill, 410 F.3d 468, 471 (8th Cir. 2005). To be admissible, Rule 404(b) evidence "must (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value." United States v. Kern, 12 F.3d 122, 124-25 (8th Cir. 1993) (citations omitted). We review the admission of such evidence for an abuse of discretion and reverse "only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity" to engage in criminal misconduct. United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998).

We conclude the district court did not abuse its discretion by admitting Nelson's testimony regarding Johnson's prior drug dealing. First, Nelson's testimony was relevant to the material issue whether Johnson had the requisite intent to enter into a conspiracy with Davis to distribute drugs. Johnson claims intent, while it may be *an*

---

[2]Rule 404(b) reads:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

issue in conspiracy cases, was not *in* issue in his case because he completely denied participation in any conspiracy during one of the pretrial conferences, citing United States v. Jenkins, 7 F.3d 803, 807 (8th Cir. 1993) ("When a defendant unequivocally relies on . . . a defense [of denying participation in the alleged crime], evidence of other acts is not admissible for the purpose of proving intent." (quoting United States v. Ortiz, 857 F.2d 900, 904 (2d Cir. 1988))). Unfortunately for Johnson, the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997), effectively overruled Jenkins. United States v. Hill, 249 F.3d 707, 712 (8th Cir. 2001) ("Old Chief eliminates the possibility that a defendant can escape the introduction of past crimes under Rule 404(b) by stipulating to the element of the crime at issue."); see Old Chief, 519 U.S. at 186-87 ("[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."); see also United States v. Williams, 238 F.3d 871, 876 (7th Cir. 2001); United States v. Bilderbeck, 163 F.3d 971, 977-78 (6th Cir. 1999); United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997).

Second, Johnson's prior bad acts were similar in kind and time to the crimes charged. Nelson testified his dealings with Johnson began five years before the charged crimes. Given the ongoing relationship between Nelson and Johnson from 1998 to 2003, we do not consider the bad acts so temporally remote such that the district court abused its discretion in permitting Nelson's testimony. See United States v. Wint, 974 F.2d 961, 967 (8th Cir. 1992) ("[E]vidence of an offense committed within the previous five years is reasonably close in time.").

Third, there was sufficient evidence to support a finding by the jury Johnson committed the prior acts of crack cocaine dealing. Johnson argues Nelson's testimony was the sole evidence Johnson committed the prior acts. We agree. Nonetheless, Nelson's testimony by itself was sufficient. Nelson testified he purchased crack cocaine from Johnson off and on for several years, sometimes twice a month; he saw Johnson possessing crack cocaine; and he saw Johnson preparing crack cocaine for distribution. Although Nelson's checkered past may have hindered his reliability, we

generally leave credibility determinations to the jury. <u>United States v. Hudson</u>, 717 F.2d 1211, 1213 (8th Cir. 1983).

Fourth, Johnson's past drug dealings were highly probative compared to their prejudicial effect. Johnson claims the sheer breadth of Nelson's testimony, encompassing twenty-two pages of trial transcript, alone makes it prejudicial. We reject this resupinate reasoning, and rather regard the testimony's reach probative of Johnson's prodigious drug dealing knowledge and intent. Johnson also contends the prosecution's closing argument increased the evidence's prejudicial effect.[3] While the prosecution's statements may have lacked Darrowesque eloquence, we do not believe the prosecution attempted to have the jury directly use Nelson's testimony to calculate the amount of crack cocaine involved in the charged conspiracy. Rather, given the trial's unique post-<u>Blakely</u> timing, it appears the prosecution urged the jury to evaluate Nelson's testimony generally as evidence of Johnson's drug dealing intent and knowledge as it considered Johnson's role in the offense and the total drug amount during the relevant period.

As a final argument, Johnson suggests the district court plainly erred by too broadly advising the jury on the use of Nelson's testimony.[4] Johnson contends the testimony's only possible use was to demonstrate Johnson's intent; Johnson's

---

[3]Although Johnson's argument appears to suggest the government's closing statement amounted to prosecutorial misconduct, he does not expressly style the contention in that manner. Instead, Johnson argues the prosecutor's comments only added to the prejudicial nature of Nelson's testimony under Rule 404(b). As such, we will not address a claim of prosecutorial misconduct. <u>See</u> <u>United States v. Simmons</u>, 964 F.2d 763, 777 (8th Cir. 1992) ("As a general rule, an appellate court may review only the issues specifically raised and argued in an appellant's brief." (citation omitted)).

[4]Johnson did not object to the instructions during trial. We therefore review for plain error. Fed. R. Crim. P. 52(b); <u>United States v. Holy Bear</u>, 624 F.2d 853, 855 (8th Cir. 1980).

knowledge or absence of mistake or accident were not at issue in the case.  We have instructed that district courts, when ruling on Rule 404(b) evidence admissibility, should not make "broad reference which merely restates the components of the rule," but "should specify which components of the rule form the basis of its ruling and why."  United States v. Harvey, 845 F.2d 760, 762 (8th Cir. 1988); cf. United States v. Mothershed, 859 F.2d 585, 589 (8th Cir. 1988) (discouraging district courts from using "laundry list" approach when instructing jury on Rule 404(b) evidence, but holding such practice "is not in itself a basis for reversal").  Here, the district court specifically ruled Nelson's testimony was admissible "to show intent, opportunity, and . . . common scheme or plan."  While the district court's jury instruction (evidence admissible to show "knowledge, intent, or absence of mistake or accident") did not precisely parallel its pretrial ruling, this minor mismatch, and the jury instructions as given, certainly did not affect Johnson's substantial rights.  See Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005) ("As long as the jury is correctly instructed on the substantive issues in the case, we commit to the sound discretion of the district court the actual form and language of jury instructions." (internal quotations omitted)); United States v. Baykowski, 615 F.2d 767, 772 (8th Cir. 1980).

## B.    Sufficiency of the Evidence

Johnson argues there was insufficient evidence to convict him of conspiracy to distribute fifty grams or more of cocaine base.  Discounting the multitudinous damning details divulged by his co-conspirator, Davis, Johnson claims the evidence demonstrated at most a one-time transaction between the two.  Johnson further questions the evidence supporting the jury's finding of fifty grams or more of crack cocaine involved in the crime.  He argues the total weight of the crack cocaine recovered in the trailer was only approximately 2.65 grams, and the evidence of Davis purchasing crack cocaine from Johnson involved periods before the relevant time frame.

"We review de novo the sufficiency of the evidence, examining the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." United States v. Blaylock, 421 F.3d 758, 772 (8th Cir. 2005), cert. denied, 126 S. Ct. 1108 (2006) (citing United States v. Sheikh, 367 F.3d 756, 763 (8th Cir. 2004)). We will not disturb the verdict unless no reasonable construction of the evidence will support the jury's verdict. Id.

To convict Johnson of conspiracy, the government needed to prove Johnson (1) had an agreement to achieve an illegal purpose, (2) knew of the agreement, and (3) knowingly became part of the agreement. See United States v. Pizano, 421 F.3d 707, 719 (8th Cir. 2005), cert. denied, No. 05-8684, 2006 WL 386990 (Feb. 21, 2006). The government need not have direct evidence of an explicit agreement–a "tacit understanding" among co-conspirators may be, and often will be, inferred from circumstantial evidence. United States v. Rojas, 356 F.3d 876, 879 (8th Cir. 2004); United States v. Nambo-Barajas, 338 F.3d 956, 960-61 (8th Cir. 2003); United States v. Pintar, 630 F.2d 1270, 1275 (8th Cir. 1980).

Upon review of the evidence, "resolving all evidentiary conflicts in favor of the government," United States v. Gomez, 165 F.3d 650, 654 (8th Cir. 1999), we conclude there was sufficient evidence to convict Johnson of conspiracy. Davis testified against Johnson exhaustively (thirty-five pages of trial transcript) as to how Johnson obtained drugs, prepared them for sale by Davis, fronted them to Davis, supplied Davis with scales to weigh the drugs, and brought customers to Davis for sales. Regarding the total drug quantity of fifty or more grams, Davis testified to purchasing one-quarter ounce (7.058 grams) of crack cocaine from Johnson once or twice every month for at least eighteen months, during a time period covered under the superseding indictment. Simple arithmetic shows substantial evidence supported the jury's conclusion: 18 months times 7.058 grams equals 127.044 grams.

Johnson also argues there was insufficient evidence to convict him of distribution of and possession with intent to distribute crack cocaine. He claims his

mere presence in Davis's trailer where the drugs were found was insufficient to support a conviction for possession. Contrary to Johnson's assertion, the evidence demonstrates more than Johnson's mere presence. Robinson testified he observed Johnson remove a plastic baggie from his pocket and throw it on the floor when Johnson heard the police entering the trailer. The baggie was shown to contain crack cocaine, supporting a finding of actual possession. Davis testified Johnson supplied the other seized drugs, and Davis and Johnson had a working relationship to sell drugs, supporting a finding of constructive possession. See United States v. Wajda, 810 F.2d 754, 762-63 (8th Cir. 1987). We therefore hold there was sufficient evidence Johnson possessed crack cocaine. The presence of the scales, supplied by Johnson, was sufficient evidence of Johnson's intent to distribute the possessed drugs. Id. at 763. Finally, Johnson's actions in bringing Robinson to Davis's trailer and having Davis sell crack cocaine to Robinson was sufficient evidence Johnson distributed the drugs.

## III.   CONCLUSION

For the reasons stated, we affirm Johnson's convictions for conspiracy to distribute fifty grams or more of cocaine base, and for distribution of and possession with intent to distribute cocaine base.

_____