# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1508

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Gregg Michael Langley, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: September 22, 2008
Filed: December 10, 2008

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Gregg Michael Langley challenges his convictions for traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor, and using a means of interstate commerce to persuade, induce, entice, or coerce a minor to engage in sexual activity for which a person could be charged with a crime. We affirm.

I

In February 2006, then fourteen-year-old J.C., who was living in Missouri, was approached online by then thirty-year-old Langley, who was living in Arkansas. Via

instant messenger, J.C. chatted online with Langley using two different Yahoo! user profiles. Langley also asked J.C. for her phone number, and they spoke on the phone.

Initially, J.C.'s online profiles listed her age as eighteen and twenty-one years old. J.C. selected these ages because Yahoo! requires an individual to be eighteen years old to create a profile. After J.C. and Langley began communicating, J.C. changed one of her Yahoo! profiles to reflect her true age, fifteen years old. Langley noticed this change, and said, "I thought you were 18." J.C. responded, "I told you that, but I'm really 15." Langley responded, "Just don't tell nobody. I don't want to get in trouble."

When the Internet chats and phone calls first began, they were casual conversations about work and school, but they turned sexual. Langley talked about J.C. coming to his house in Arkansas, and the sexual acts he wanted to do with and to J.C., including J.C. performing oral sex on him.

One time when Langley called J.C.'s grandmother's house to talk to J.C., J.C.'s stepmother, Ashley Meyers, answered the phone. Langley thought he was talking to J.C., and Meyers pretended to be her. Meyers believed Langley to be an older man due to his voice, and was disturbed by the conversation, which included Langley saying he missed J.C. and asking for more photographs of her. The next morning, Meyers confronted J.C., who admitted she was communicating with a grown man. Meyers called the local police, who advised her to contact Detective Jim Murray with the Diamond Missouri Police Department because he specialized in investigating online crimes.

On April 21, 2006, Detective Murray, posing as J.C., began chatting online with Langley. Langley requested they meet, and they arranged to meet that night at Blimpie's in Jane, Missouri. During the Internet chat, Langley said J.C. could spend the night at his home, and would "have more fun than u could imagi[n]e."

When Langley arrived at Blimpie's to rendevous with J.C., he saw a police officer and drove away because he was "scared." After the failed meeting, Langley and Detective Murray chatted online again. Langley again discussed the sexual activities he wanted to perform with J.C. They decided to meet later in the week.

During an online chat on April 23, 2006, Langley talked about how much he wanted J.C. to perform oral sex on him and to have sexual intercourse with her. They arranged to meet at the EZ Mart in Bentonville, Arkansas. Detective Murray suggested they celebrate J.C.'s fifteenth birthday when they met. Langley stated he thought she was fifteen now, and asked how old she was turning. Detective Murray confirmed J.C. was turning sixteen, and thus was currently fifteen.

On April 28, 2006, Bentonville police officers waited for Langley at the EZ Mart in Bentonville, Arkansas. Langley was told J.C. would be in a white truck, and a decoy truck was in the parking lot. He pulled into the parking lot, stopped next to the decoy truck, and then drove away. Bentonville Police Department officers stopped Langley and arrested him.

That same day, Bentonville police officers executed a search warrant at Langley's apartment and seized his computer. On Langley's computer, the officers found eight photographs of a nude to partially-nude girl who appeared to be less than eighteen years old. Five of the photographs depicted this apparent minor engaging in sexually explicit conduct. The girl in these photographs was never identified.

Langley was indicted for traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b), and using a means of interstate commerce to persuade, induce, entice, or coerce a minor to engage in sexual activity for which a person could be charged with a crime in violation of 18 U.S.C. § 2422(b).

Prior to trial, the government filed a Notice of Intent to Introduce 404(b) Evidence, seeking permission to admit the eight photographs found on Langley's computer. Langley filed a motion the following day to exclude such evidence, which the district court[1] denied.

A four-day jury trial commenced on August 27, 2007. During trial, the photographs were admitted with a limiting instruction that they were only admissible to show Langley's motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. The jury found Langley guilty on both counts.

Langley was sentenced to 78 months imprisonment on each count, to run concurrently, a five-year term of supervised release, a $10,000 fine, and a $200 special assessment. This appeal followed.

II

On appeal, Langley seeks to overturn the guilty verdict because: (a) the district court improperly admitted the eight photographs of an apparent minor; and (b) there was insufficient evidence to find him guilty on either count.

A

We do not reach the issue whether the district court erred in admitting the photographs of an apparent minor because, regardless of whether an error actually occurred, any error was harmless. We review the district court's decision to admit evidence for abuse of discretion. United States v. Lucas, 521 F.3d 861, 865 (8th Cir. 2008). "We will reverse a conviction only when an improper evidentiary ruling has affected substantial rights or had more than a slight effect on the verdict." United

---

[1] The Honorable Jimm L. Hendren, United States District Judge for the Western District of Arkansas.

States v. Cannon, 475 F.3d 1013, 1023 (8th Cir. 2007) (internal quotation marks omitted). "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." United States v. McPike, 512 F.3d 1052, 1055 (8th Cir. 2008) (internal quotation marks omitted).

We do not overturn Langley's conviction because any asserted error by the district court was harmless. The case against Langley was strong. Viewing the evidence in favor of the verdict, it demonstrates Langley believed J.C. was below the age of consent (discussed infra), used a means of interstate commerce to persuade and induce her to engage in illegal sexual acts, and traveled across state lines for the purpose of engaging in illegal sexual acts with her. Therefore, irrespective of whether the district court erred in admitting the photographs, such error was harmless.

B

There was sufficient evidence to convict Langley on both counts in the indictment. Langley argues there was insufficient evidence because it was "unclear" whether he knew J.C. was under the age of sixteen. J.C.'s testimony, Langley's behavior evidencing a consciousness of guilt, and the transcripts of the Internet chats between J.C. and Langley, however, are sufficient evidence for a reasonable jury to conclude Langley believed J.C. to be under the age of sixteen.

We review "the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007). We will "reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Birdine, 515 F.3d 842, 844 (8th Cir. 2008).

Both offenses with which Langley was charged require the government to demonstrate he believed J.C. to be under the age of sixteen. The § 2422(b) offense is "limited to conduct that persuades or attempts to persuade a minor to engage in sexual activity 'for which any person can be charged with a criminal offense.'" United States v. Patten, 397 F.3d 1100, 1103 (8th Cir. 2005) (quoting 18 U.S.C. § 2422(b)). We look to state law to provide the underlying criminal offense. Id. In Arkansas, it is a criminal offense for a defendant, age twenty years or older, to engage in sexual intercourse or "deviate sexual activity"[2] with another person who is less than sixteen years of age. Ark. Code Ann. § 5-14-127(a)(1). Similarly, the § 2423(b) offense is limited to traveling in interstate commerce "for the purpose of engaging in any sexual act . . . with a person under 18 years of age that would be in violation of Chapter 109A." 18 U.S.C. §§ 2423(b) and (f). Chapter 109A proscribes engaging in a sexual act[3] with a person who attained the age of twelve but not sixteen. Id. § 2243(a); United States v. Blazek, 431 F.3d 1104, 1108 (8th Cir. 2005).

Langley contends there was insufficient evidence to conclude he believed J.C. was under the age of sixteen because J.C.'s online profiles initially stated she was eighteen and twenty-one years old. This is incorrect. J.C. testified she told Langley she was not eighteen years old, as stated in her initial online profile, rather she was fifteen years old. His only response was to instruct her not to tell anyone they were communicating or he could get into trouble.

In addition, Langley decided to abort their planned meeting at Blimpie's because he was "scared" of the police officers on the scene. It is reasonable to conclude he was scared of the police because he knew he was about to engage in illegal activity, i.e., he knew J.C. was under the age of sixteen.

---

[2] "Deviate sexual activity" is defined to include oral sex. Ark. Code Ann. § 5-14-101(1)(A).

[3] "Sexual act" is defined to include oral sex. 18 U.S.C. § 2246(2)(B).

-6-

The jury also viewed and examined the Internet chat log from April 23, 2006. Detective Murray, posing as J.C., typed the wrong age for J.C. Langley noticed, evidencing his belief she was fifteen years old:

> J.C.: maybe we can celebrate my [birthday]
> J.C.:  i will be 15 next month
> Langley: sure
> Langley: wait
> Langley: u said ur 15 now
> Langley: and ur turning 15
> Langley: 16
> J.C.: yes
> Langley: not 15
> J.C.: we can celebrate it
> Langley: how old will u b
> Langley: ?
> Langley: 15 or 16?
> J.C.: 16

Based upon J.C.'s testimony, evidence of Langley's consciousness of guilt, and the above online colloquy, a reasonable jury could find Langley believed J.C. was under sixteen years of age. Although Langley testified he was confused as to J.C.'s age, we will not second-guess credibility determinations made by the jury during trial. Birdine, 515 F.3d at 844. Accordingly, Langley has not demonstrated there was insufficient evidence to support his convictions.

We affirm Langley's convictions.

BEAM, Circuit Judge, concurring.

I concur in the result reached by the court today because I agree that even excluding the eight photographs at issue in this case there is sufficient evidence to convict Mr. Langley of the two criminal charges. In doing so, however, I leave no inference that I agree with the possibility that under the facts of this case the photographs were admissible. They were not.

As we have seen through the promulgation of Federal Rules of Evidence 413, 414 and 415, Congress can authorize the admissibility of propensity evidence if it wishes. But, it has not done so for the evidence proffered by the government in this litigation. See Fed. R. Evid. 404(b). I concede that trafficking in child pornography and the commission of associated offenses constitute reprehensible crimes. But even so, an accused is entitled to a fair trial, that is one properly employing the rules of evidence. I respectfully submit that such did not occur here.

As the court notes, eight photographs of the same individual were discovered on Langley's computer during a warrant search of his home. Neither the identity nor the age of the woman imaged were ever established. Nonetheless, the government, citing Federal Rule of Evidence 404(b), proffered the photographs as evidence of Langley's intent and motive to travel in and use means of interstate commerce to commit crimes involving an identified fifteen-year-old woman. Intent is a specific element of the charged offenses. And, it was the burden of the government to prove this element by proof beyond a reasonable doubt.

Pretrial, Langley made a motion to exclude the photographs of the unidentified female, whose circumstances, relationships and age were and remain undetermined. If Arkansas law applies, the woman Langley sought to contact needed to be "less than sixteen (16) years of age." Ark. Code Ann. § 5-14-127. If federal law applies, she needed to be an individual "who ha[d] not attained the age of 18 years." 18 U.S.C. § 2422(b). Thus, if the prosecuting witness was eighteen years old, there was no crime. Likewise, if the unidentified woman was eighteen years old, it was lawful for Langley to maintain the photographs on his computer and the photographs provided no evidence relevant to Langley's intent to travel to see the fifteen-year-old victim. And, other than the physical existence of the pictures, there is and was no evidence that the unknown woman was under eighteen years at the time the photographs were taken, at the time they came into Langley's possession, at the time they were seized by the government, at the time they were received in evidence during the government's case-in-chief at trial, or at the time the government presented them to the jury during its summation with instructions for the jurors to "decide how old she looks." Tr. at 531. Indeed, at the time they were received in evidence at the trial, the only proof that the woman may have been less than eighteen years old was the visual conclusions of the trial judge and the government's attorney. In other words, there was no foundational evidence whatever concerning the person in the photographs. Nonetheless, the trial judge overruled Langley's motion in limine and the eight photographs were received in evidence during the government's case-in-chief without further discussion, but with an erroneous limiting instruction that I will discuss in a moment.

There was no evidence as to when or where the pictures were taken and the government conceded at oral argument before this court that there is no evidence as to the age or identity of the woman except a concession that she had obviously reached puberty, a fact that the photographs bear out. In this regard the government's counsel forthrightly stated that the vast majority of child pornography seen in criminal charges obviously involves prepubescent children and "if you're dealing with a child

over the age of twelve or thirteen and puberty has hit . . . the government does not charge those cases unless you have someone to definitely state the age because it is difficult once a female in particular hits puberty to know exactly what age they are." Oral Arg. Recording at 27:07. Accordingly, it is clear that the government placed in evidence proof of propensity only and without establishing, under any acceptable burden of proof, that it was unlawful for Langley to possess the pictures or that they were relevant to any properly contestable issue in the case. I concede that this court has stated that "[r]ule 404(b) is a rule of inclusion, prohibiting only evidence that tends solely to prove the defendant's criminal disposition." United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995); see also Huddleston v. United States, 485 U.S. 681, 688-89 (1988). But, I feel certain that Shoffner did not mean that the rule was this inclusive.

Additionally, while the government contends that evidence was offered only to prove Langley's "intent to travel to meet the fifteen year old," Oral Arg. Recording at 19:08, it asked for and received the following instruction from the district court.

> These [Federal Rule of Evidence 404(b)] photographs . . . are admissible only to show [Langley's] motive, opportunity, intent, preparation, plan, knowledge or absence of mistake or accident.

Tr. at 221-22. But, the photographs addressed no issue in the trial except, possibly, intent. Thus, confusingly for the jury, the instruction was not limited to the purpose for which it was actually offered by the government.

This court has directed that district courts, when ruling and instructing on 404(b) evidence, should not make broad references which merely restate the components of the rule but should specify which component of the rule (here, according to the government, intent and possibly motive) forms the basis of its ruling and why. United States v. Johnson, 439 F.3d 947, 953-54 (8th Cir. 2006). Nonetheless, this circuit has never found this error to be a basis for reversal. Id.

Given the almost certain inadmissibility of these photographs coupled with the improvident jury instruction, this case presents a very close question of whether to reverse, or not. I reluctantly choose the latter course, however, given the balance of the evidence in the case, and concur in the result reached by the panel majority.

_____