# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2111

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Larry Jongewaard, | * | |
| | * | |
| Appellant. | * | |

_____

Submitte:  November 11, 2008
Filed:  June 3, 2009

_____

Before MURPHY, RILEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Larry Jongewaard was convicted of transmitting in interstate commerce a communication containing a threat to injure the person of another in violation of 18 U.S.C. § 875(c).  Jongewaard appeals, arguing that his conviction cannot stand because the Government failed to allege or prove that the relevant interstate communications were made to effect some change or achieve some goal through

intimidation. Alternatively, Jongewaard contends that two evidentiary rulings by the district court[1] deprived him of a fair trial. For the following reasons, we affirm.

## I.    BACKGROUND

In the waning hours of September 23, 2007, Larry Jongewaard placed a telephone call from his home in Omaha, Nebraska, to the home of Ted Schmidt in Mellette County, South Dakota. During this call, Jongewaard told Schmidt that he was going to kill Richard Jongewaard, Larry Jongewaard's uncle and Schmidt's best friend. Jongewaard repeated this threat to Schmidt as many as forty times in a series of calls that continued into the early morning hours of September 24. Jongewaard invited Schmidt to tape record their conversation (Schmidt did not), stating "I know this is illegal for me to say this and I'm saying it." Jongewaard went on to describe his plan to kill Richard with Richard's own gun and then to turn the gun on himself. Jongewaard also recounted spending a week or two near Richard's home the previous November, undetected, to "stake out the place."

At about 12:30 a.m. on September 24, Schmidt called Richard Jongewaard to inform him of the threat that Larry Jongewaard had made. Later that morning, Schmidt went with Richard to the Mellette County Courthouse to report Larry's threatening phone calls and to seek a restraining order on Richard's behalf.

Two months later, Larry Jongewaard called Schmidt after learning that he had been charged with violating 18 U.S.C. § 875(c). At first, Jongewaard denied making any threatening statements during the September 23 and 24 phone calls. Schmidt eventually interrupted Jongewaard and repeated the exact wording of Jongewaard's earlier threat to kill Richard Jongewaard. Jongewaard then acknowledged his

---

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

previous statements but noted that he made them to Schmidt and not to Richard. Jongewaard told Schmidt that he planned to turn himself in and contest the charge, vowing that he would make Richard "look so bad" that Schmidt would be "embarrassed to be [Richard's] friend."

At trial, the Government presented testimony from Schmidt, Richard Jongewaard and two employees of telecommunications companies that provide service in Nebraska and South Dakota. Jongewaard filed a motion in limine seeking to prevent Schmidt and Richard Jongewaard from testifying about an incident that occurred in September 2004 in which Larry caused Richard to fear for his life. Jongewaard also objected to Richard's testimony regarding the call he received from Schmidt at about 12:30 a.m. on September 24, 2007, in which Schmidt told Richard about Larry's threat. The district court denied Jongewaard's motion in limine insofar as it related to the September 2004 incident and overruled his objection relating to the phone conversation between Schmidt and Richard. At the close of the Government's case-in-chief, Jongewaard moved for a judgment of acquittal, which the district court denied. Jongewaard was convicted and sentenced to 60 months' imprisonment, the top of the advisory sentencing guidelines range.

## II.    DISCUSSION

Jongewaard's principal argument is that the Government failed to allege or prove an essential element of 18 U.S.C. § 875(c); namely, that the relevant interstate communications were made to effect some change or achieve some goal through intimidation. The dispositive question is whether § 875(c) actually contains such a requirement. This is a question of law that we would ordinarily review de novo. *See, e.g.*, *United States v. Yockel*, 320 F.3d 818, 822 (8th Cir. 2003). However, because Jongewaard did not raise this issue before the district court, our review is for plain error. *See, e.g.*, *United States v. Jenkins*, 78 F.3d 1283, 1288 (8th Cir. 1996). Under the plain error standard, the defendant bears the burden of showing that an obvious

error affected his substantial rights. *United States v. New*, 491 F.3d 369, 378 (8th Cir. 2007). We have discretion to correct such an error "if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Jongewaard insists that his proposed requirement that an allegedly unlawful communication be made to effect some change or achieve some goal is an element of § 875(c) rather than a limitation derived from the First Amendment or some other constitutional source.[2] Our inquiry therefore begins and ends with the unambiguous text of the statute. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000))).

Section 875(c) provides that "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." According to Jongewaard, the legislative history of § 875(c) shows that Congress intended to criminalize only a subcategory of threats aimed at inducing the person being threatened to act in a certain manner. This

----

[2]Because § 875(c) criminalizes "pure speech," the Government must prove that an allegedly unlawful communication contains a so-called "true threat." *United States v. Stewart*, 411 F.3d 825, 828 (7th Cir. 2005) (quoting *Watts v. United States*, 394 U.S. 705, 707-08 (1969)). In this circuit, the test for distinguishing a true threat from constitutionally protected speech is whether an objectively reasonable recipient would interpret the purported threat "as a serious expression of an intent to harm or cause injury to another." *See, e.g.*, *Doe ex rel. Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc). Jongewaard expressly disclaims any challenge to his conviction under the First Amendment, so we need not address the question whether Jongewaard's statements to Schmidt contained a true threat rather than constitutionally protected speech.

assertion is contrary to the statutory text, which prohibits transmitting in interstate commerce *any threat* to injure the person of another. The ordinary meaning of the term "threat" is not limited to statements made to effect some change or achieve some goal. *See* Black's Law Dictionary 1519 (8th ed. 2004) (defining "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent"); Webster's Third New International Dictionary 2382 (2002) (defining "threat" as "an expression of an intention to inflict evil, injury, or damage on another usu. as retribution or punishment for something done or left undone"). Rather, a statement constitutes a threat if it expresses an intention to inflict harm, loss, evil, injury, or damage on another, regardless of whether the person making the threat has a discernible purpose for communicating such an intention.

The plain language of § 875(c) thus criminalizes a broad spectrum of threats to injure the person of another, ranging from threats that are a means to achieving some tangible end, to threats that serve no discernible purpose other than intimidation for its own sake. Jongewaard cannot plausibly argue that Congress used "threat" as a term of art (*i.e.*, to refer to a subcategory of goal-oriented threats), that the inclusion of the adjective "any" was a scrivener's error, or that the meaning of "any threat" is ambiguous. Since Jongewaard has not shown that the statute is ambiguous or that enforcing the statute as written would produce absurd results, we need not consider the legislative history of § 875(c). *See In re Operation of Mo. River Sys. Litig.*, 418 F.3d 915, 918 (8th Cir. 2005) ("Absent some ambiguity in the statute, we have no occasion to look to legislative history." (quoting *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1032 (8th Cir. 2003))).

Jongewaard also relies on a controversial decision in which the Sixth Circuit held that "a communication objectively indicating a serious expression of an intention to inflict bodily harm cannot constitute a threat unless the communication . . . is conveyed for the purpose of furthering some goal through the use of intimidation."

*United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997); *see generally* Jennifer E. Rothman, *Freedom of Speech and True Threats*, 25 Harv. J.L. & Pub. Pol'y 283, 309-11 (2001). For the reasons set out above, we reject the premise that a communication qualifies as a threat under § 875(c) only if it is a means to an end other than intimidation for its own sake. *Cf. Alkhabaz*, 104 F.3d at 1501 (Krupansky, J., dissenting) ("[The] statutory language commands only that the . . . communication must contain *any threat* to kidnap or physically injure *any person*, made for *any reason* or no reason."). No other circuit has adopted the Sixth Circuit's narrow interpretation of § 875(c), and we decline to do so.[3]

Jongewaard's reliance on *United States v. Bellrichard*, 779 F. Supp. 454 (D. Minn. 1991), *aff'd*, 994 F.2d 1318 (8th Cir. 1993), is likewise misplaced. In *Bellrichard*, Judge Murphy posed a series of hypotheticals designed to illustrate the significance of the constitutionally mandated "true threat" analysis in the context of a prosecution under 18 U.S.C. § 876. *See id.* at 459. Since Jongewaard expressly disclaims any challenge to his conviction under the First Amendment, *Bellrichard* is

---

[3]We note that a panel of this court quoted language from *Alkhabaz* as an example of the tests formulated by other circuits to distinguish true threats from constitutionally protected speech. *See Doe ex rel. Doe v. Pulaksi County Special Sch. Dist.*, 263 F.3d 833, 837 (8th Cir. 2001), *rev'd*, 306 F.3d 616 (8th Cir. 2002) (en banc). The panel in *Doe* apparently overlooked the Sixth Circuit's disclaimer that its opinion did not address the "First Amendment issues raised by the parties." *See Alkhabaz*, 104 F.3d at 1493. The holding in *Alkhabaz* was instead premised on the court's interpretation of the elements of § 875(c), *see id.* at 1494-96, a statute that was not at all relevant in *Doe*, which involved a First Amendment challenge to a student's expulsion from school, *see Doe*, 263 F.3d at 835. Although the panel in *Doe* did not expressly adopt the test purportedly announced in *Alkhabaz*, it "integrated" *Alkhabaz*, along with authorities from this and other circuits, in formulating "a concise standard for identifying a true threat." *Doe*, 263 F.3d at 837. Even assuming, however, that the panel adopted the holding in *Alkhabaz* entirely, we would not be bound to follow the panel's decision, for it was vacated by an en banc decision that did not adopt, quote, cite, or even allude to *Alkhabaz*. *See Doe*, 306 F.3d at 619, 624.

inapposite. Besides, *Bellrichard* did not suggest that a true threat must be made to effect some change or achieve some goal through intimidation.

Based on the foregoing analysis, we hold that Jongewaard's proposed change-or-goal requirement is not an element of § 875(c). Because the Government was not required to allege in the indictment or prove at trial that the relevant interstate communications were made to effect some change or achieve some goal through intimidation, we conclude that Jongewaard's principal argument fails to show that his conviction was tainted by error, plain or otherwise.

Jongewaard contends, in the alternative, that two evidentiary rulings by the district court deprived him of a fair trial. We disagree.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. LaDue*, 561 F.3d 855, 857 (8th Cir. 2009). The first ruling that Jongewaard challenges is the district court's decision to allow Schmidt and Richard Jongewaard to testify about the September 2004 incident in which Larry caused Richard to fear for his life. According to Richard, Larry showed up at Richard's home late one evening, unannounced, along with Larry's wife, mother, and brother. Larry's mother reportedly confronted Richard with allegations that he abused Larry when Larry was a child. Later, outside the presence of his wife and mother, Larry allegedly remarked to Richard, "[I] might commit a double murder tonight."

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We have held that evidence of prior acts is admissible if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence;

and (4) its potential for unfair prejudice does not substantially outweigh its probative value." *United States v. Ziesman*, 409 F.3d 941, 952 (8th Cir. 2005). Applying this test, we have found that a defendant's past threats may be admissible under Rule 404(b) to provide "context for the indicted conduct" and to show "the seriousness of [later] threats." *United States v. Cvijanovich*, 556 F.3d 857, 864 (8th Cir. 2009).

The district court found that the proffered evidence relating to the September 2004 incident, including Jongewaard's alleged declaration that he "might commit a double murder tonight," was admissible under Rule 404(b). Specifically, the court found that the incident involved the same parties and was "reasonably close in time" to the alleged offense, that the evidence could be admitted to prove Jongewaard's intent or the absence of a mistake, and that the probative value of the evidence outweighed its potential prejudicial effect. In addition, the court instructed the jury that it could consider Jongewaard's alleged prior acts only if it found that the evidence of those acts was "more likely true than not true," and then "only on the issues of state of mind or intent, motive, and absence of mistake or accident."

Jongewaard argues that the September 2004 incident had no relevance apart from proving that he previously "made statements exhibiting an angry character" and that Richard Jongewaard believed that the threatening statements communicated to Schmidt in September 2007 were "made in conformity [with] this attribute of [Larry] Jongewaard's character." Moreover, Jongewaard suggests that neither his intent nor the absence of a mistake were material issues because "[n]o one claimed that Jongewaard's . . . statements to Schmidt [in September 2007] were a mistake [or] that [Jongewaard] did not intend to make [them]." We are not persuaded.

Jongewaard's statements and actions during the September 2004 incident were relevant evidence of Jongewaard's motive and intent to commit the present offense. Contrary to Jongewaard's assertions on appeal, he made his intent a material issue by seeking and receiving a jury instruction concerning voluntary intoxication, by eliciting

-8-

testimony from his brother, Nicky Ham, that he drank alcohol on a daily basis, including on the night of September 23, 2007, and by arguing to the jury that "intoxication does play a part in your determination[] o[f] whether Larry Jongewaard had the specific intent . . . to commit the crime."[4]

Jongewaard does not argue that the September 2004 incident was either overly remote in time or insufficiently similar in kind to the present offense. Nor does Jongewaard contend that the evidence of the September 2004 incident was insufficient. Although Jongewaard describes the evidence as "highly prejudicial," he has not shown that its potential for *unfair* prejudice substantially outweighed its probative value. *Cf. United States v. Pitrone*, 115 F.3d 1, 8 (1st Cir. 1997) ("Virtually all evidence is prejudicial—if the truth be told, that is almost always why the proponent seeks to introduce it—but it is only *unfair* prejudice against which the law protects."). In any event, the district court's limiting instruction lessened the danger that the evidence had an unfairly prejudicial effect. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006). Thus, we are satisfied that the district court did not abuse its discretion by admitting the disputed evidence about the September 2004 incident.

The second ruling that Jongewaard challenges is the district court's decision to overrule Jongewaard's hearsay objection to Richard Jongewaard's testimony regarding the call he received from Schmidt at about 12:30 a.m. on September 24, 2007, in which Schmidt told Richard about Larry's threat. The court found that this testimony was admissible under Rule 803(2) because Schmidt's statements to Richard qualified as "excited utterances," which are excepted from the general rule against hearsay. *See United States v. Bercier*, 506 F.3d 625, 630 (8th Cir. 2007) ("Rule 803(2) excepts [from the hearsay rule] an out-of-court statement 'relating to a startling

---

[4]Because Jongewaard does not contend that the evidence was insufficient to satisfy the mens rea element charged in the indictment, we express no opinion on whether § 875(c) requires proof of specific intent.

event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" (quoting Fed. R. Evid. 803(2))).

Jongewaard argues that the Government failed to lay an adequate foundation to show that the call between Schmidt and Richard occurred while Schmidt was under the stress of excitement caused by his conversation with Larry. This argument fails to recognize that Schmidt's testimony preceded Richard's. There was no need for the Government to make a full proffer in response to Jongewaard's objection because Schmidt had already testified that he called Richard after his startling conversation with Larry to recount "exactly what Larry had said." Schmidt's testimony provided an adequate foundation for Richard to testify about his recollection of Schmidt's excited utterances. Thus, we are satisfied that the district court did not abuse its discretion by overruling Jongewaard's objection to Richard Jongewaard's testimony.

Even if we assume, for the sake of argument, that the challenged evidentiary rulings were improper in whole or in part, the uncontroverted evidence of Jongewaard's guilt was overwhelming. Accordingly, any error was harmless. *See, e.g.*, *United States v. Langley*, 549 F.3d 726, 729 (8th Cir. 2008).

## III.    CONCLUSION

For the foregoing reasons, we affirm Jongewaard's conviction.

_____