RILEY, Chief Judge,
dissenting.
The majority vacates the Board’s order and remands this case for a third decision in this matter because the majority “cannot discern whether the Board rejected Sandoval’s arguments on a wholesale basis” or “whether the Board’s analysis was more nuanced” and based on certain factors particular to Sandoval’s case. Ante at 983. Because INA § 212(a)(6)(C)(ii)(I), 8 U.S.C. § 1182(a)(6)(C)(ii)(I), unambiguously applies to Sandoval as “any alien” and substantial evidence supports the IJ’s decision (upheld by the Board) that Sandoval did not timely retract her false claim to United States citizenship, I respectfully dissent.
I. Plain Meaning of § 212(a)(6)(C)(ii)(D
Despite what the majority describes as “the all encompassing language of the statute — after all, section 212(a)(6)(C)(ii) applies to ‘[a]ny alien’ who makes a false claim to citizenship,” the majority entertains Sandoval’s “more nuanced argument that” § 212(a)(6)(C)(ii)(I) means something other than what the statute plainly says.[2] Ante at 986. The majority then remands the case to the Board “to articulate the reasons Sandoval deserves no relief.” Ante at 983. In so doing, the majority abdicates the court’s responsibility to give effect to the clearly expressed intent of Congress in § 212(a)(6)(C)(ii)(I) and ignores the government’s congruent and consistent application of the statute to Sandoval.
Where, as here, “the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See also In re Operation of Mo. River Sys. Litig., 418 F.3d 915, 917-18 (8th Cir.2005) (“Unless exceptional circumstances dictate otherwise, when we *990 find the terms of a statute unambiguous, judicial inquiry is complete.” (quoting Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1032 (8th Cir.2003) (internal quotation marks omitted))).
The majority does not explain, and it is difficult to imagine, how Congress could more clearly state § 212(a)(6)(C)(ii)(I) applies to “any alien,” including unaccompanied minors like Sandoval. See United States v. Jongewaard, 567 F.3d 336, 340 (8th Cir.2009) (rejecting the possibility that Congress’s use of the phrase “any threat” could plausibly be argued to be ambiguous or a nuanced “term of art”). Absent such an ambiguity, “[t]he plain meaning of [§ 212(a)(6)(C)(ii)(I) ] controls,” Horras v. Leavitt, 495 F.3d 894, 900 (8th Cir.2007) (quoting Hennepin Cnty. Med. Ctr. v. Shalala, 81 F.3d 743, 748 (8th Cir.1996) (internal quotation marks omitted)). We need not “wrestle with the implications of applying the ‘drastic measure’ of a permanent admissibility bar to each child regardless of her capacity to comprehend the wrongfulness of her actions,” ante at 987, because Congress resolved that issue when it enacted § 212(a)(6)(C)(ii)(I).
As the majority notes, there is one limited statutory exception that does not apply here. Ante at 985-86. See 8 U.S.C. § 1182(a)(6)(C)(ii)(II). The fact Congress provided only one exception strongly supports the conclusion that the plain language of “any alien” is purposeful and has no other exceptions. See United States v. Johnson, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (“When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.”).
The majority’s reliance on Reves v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), as support for ignoring the plain meaning of “any alien,” see ante at 987-88, is misplaced. In Reves, the Supreme Court declined automatically to treat all notes as securities within the meaning of the Securities Exchange Act of 1934,15 U.S.C. § 78a et seq., because the purpose of the act was to regulate investments and the term “note” had a “relatively broad” meaning, “encompass[ing] instruments with widely varying characteristics, depending on whether issued in a consumer context, as commercial paper, or in some other investment context.” Reves, 494 U.S. at 62, 110 S.Ct. 945 (internal quotation marks omitted). No such uncertainty exists here. The INA speaks directly to false claims to U.S. citizenship like Sandoval’s, unambiguously defines alien as “any person not a citizen or national of the United States,” see 8 U.S.C. § 1101(a)(3), and delineates only one class of aliens not covered by the statute. Sandoval is “obviously within the class Congress intended to regulate.” Reves, 494 U.S. at 62, 110 S.Ct. 945.
To the extent the majority maintains Congress has not “directly spoken” to this specific issue and circumstances, the government has clearly articulated its reasonable interpretation that § 212(a)(6)(C)(ii)(I) unambiguously refers to “any alien,” including unaccompanied minors like Sandoval. See Chevron, 467 U.S. at 843, 104 S.Ct. 2778 (explaining, “if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute”).
The majority contends the Board’s decisions “are of no help in articulating a coherent position” and the Board “dodged the issue” in this petition. Ante at 987. The majority also attempts to expand the government’s inartful oral argument into *991 an abandonment of “the black-and-white construction of the statute in favor of a case-by-case approach.”[3] Ante at 987. The majority’s recitation and reasoning are not only unwarranted given the plain meaning of § 212(a)(6)(C)(ii)(I), they are wrong.
In affirming the IJ’s decision that Sandoval was statutorily ineligible for adjustment of status, the Board unequivocally stated “[§ 212(a)(6)(C)(ii) ] neither describes nor is limited to certain classes of aliens. Rather, it is unlimited as it applies to ‘any’ alien.” In its brief, the government, citing Chevron, likewise asserts the “plain language” of § 212(a)(6)(C)(ii)(I) “applies to any and all aliens and creates no specific exceptions or waivers for unaccompanied minors.” The government then explained, “If Congress wanted to create an exception under the false claim provision for unaccompanied minors, [Congress] could have easily done so and the absence of such an exception speaks directly to the intent of Congress.” Neither the Board nor the government dodged the issue, and each took a uniform and coherent position following the plain language of the law.
Although the government admittedly “misstated the deference owed to the [Board’s] decision” at oral argument, the government’s subsequent Fed. R.App. P. 28(j) letter reiterated “[b]oth the agency and this Court must give effect to the plain language of the statute.” I agree. It is the law. It is our judicial duty. See Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778.
II. Timely Retraction
Although the majority concedes it “would have no trouble upholding [the IJ’s findings that Sandoval did not timely retract her false statements] under the substantial-evidence standard,” the majority “again abstain[s] from ruling on the merits of this argument” and “leave[s] it for the Board to decide whether the analysis of recantation should be capacity-sensitive.” Ante at 989. This is unwarranted and a waste of time.
The IJ, who was overtly sympathetic to Sandoval’s status as an unaccompanied minor, considered at length Sandoval’s age, intelligence and ability to understand her actions before deciding Sandoval “was aware that she was making a false claim to U.S. citizenship,” “had an understanding of what she was doing when she entered the United States,” and did not make a timely retraction. In reaching its decision, the IJ reluctantly followed the law, the facts and precedent, stating,
Since I am not allowed to apply a bright-line rule in [regard to the IJ’s original decision “that a minor should not be held responsible for such actions”], I do have to look to the individual respondent here and I believe that she had knowledge of what she was doing at the time.
I do not believe that we are dealing with a timely retraction here, as pursuant to the Board’s decision in Matter of M-, 9 I. & N. Dec. 118 (BIA 1960).
We must do the same: follow the law, facts and precedent. Even under Sandoval’s capacity-sensitive approach to timely *992 retraction, her petition for review should be denied.

. Sandoval argues for a different interpretation, but admits ”[t]he language of the statute suggests a strict-liability rule.”

. I suspect the government's purported failure to “buy everything it is trying to sell'' is not so much a "classic side effect of having to devise an ex post facto rationalization for someone else’s poorly-reasoned decision,” ante at 987, as it is a product of the potential conflict between the government's responsibility to enforce the statute as drafted to uphold the Board’s decision and its interest in maintaining flexibility in interpreting immigration law in the future. Regardless, we “must reject administrative constructions which are contrary to clear congressional intent.” Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. 2778.