PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-2914
———

UNITED STATES OF AMERICA

v.

ADRIAN PETER STOCK,

Appellant
———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-11-cr-00182-001)
District Judge:  Honorable Nora B. Fischer
———

Argued May 14, 2013
Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*

(Filed: August 26, 2013)

Elisa A. Long, Esq. (ARGUED)
Office of the Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA  15222
        *Counsel for Appellant*

Rebecca R. Haywood, Esq.
Laura S. Irwin, Esq. (ARGUED)
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
        *Counsel for Appellee*

―――――

## OPINION OF THE COURT

―――――

FISHER, *Circuit Judge*.

Adrian Peter Stock appeals from the District Court's order denying his motion to dismiss his indictment under Federal Rule of Criminal Procedure 12(b)(3)(B) for failure to state the offense of transmitting a threat in interstate commerce under 18 U.S.C. § 875(c).  Stock argues that the term "threat" means the expression of an intent to inflict injury in the present or future, and that the statement attributed to him does not meet that definition.  For the reasons stated below, we will affirm.

2

**I.**[1]

On August 3, 2011, Stock was charged in a one-count indictment that alleged:

"On or about February 9, 2011, in the Western District of Pennsylvania, the defendant, ADRIAN PETER STOCK, did knowingly and willfully transmit in interstate commerce a communication containing a threat to injure the person of another, that is, the defendant, ADRIAN PETER STOCK, posted a notice on Craig's List, an Internet web site, that contained the following statements, among others,

> **i went home loaded in my truck and spend the past 3 hours looking for this douche with the expressed intent of crushing him in that little piece of shit under cover gray impala hooking up my tow chains and dragging his stupid ass down to creek hills and just drowning**

---

[1] Because our consideration of a challenge under Federal Rule of Criminal Procedure 12(b)(3)(B) is confined to the facts alleged within the indictment, our factual background is similarly circumscribed. *See United States v. Huet*, 665 F.3d 588, 595-96 (3d Cir. 2012); *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011).

> **him in the falls. but alas i can't
> fine that bastard anywhere . . . i
> really wish he would die, just
> like the rest of these stupid
> fucking asshole cops. so J.K.P.
> if you read this i hope you burn
> in hell. i only wish i could have
> been the one to send you there.**

In violation of Title 18, United States Code, Section 875(c)."

App. at 50.

Stock moved to dismiss his indictment under Rule 12(b)(3)(B)[2] for failure to state an offense, arguing that his alleged statement did not constitute a threat under § 875(c) as a matter of statutory interpretation, but disclaiming any First

---

[2] Stock actually moved to dismiss his indictment under both Federal Rule of Criminal Procedure 12(b)(2) and Rule 12(b)(3)(B). App. at 53. Stock may have cited Rule 12(b)(2) because his argument that his indictment fails to state an offense is based on our holding in *United States v. Panarella* that "for purposes of Rule 12(b)(2), a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." 277 F.3d 678, 685 (3d Cir. 2002). But after we decided *Panarella*, Rule 12(b)(2) was re-numbered as Rule 12(b)(3)(B). *United States v. Al Hedaithy*, 392 F.3d 580, 586 n.6 (3d Cir. 2004). Thus, our discussion proceeds under Rule 12(b)(3)(B), which provides that "at any time while the case is pending, the court may hear a claim that the indictment . . . fails . . . to state an offense."

5

Amendment challenge.[3]  After holding a hearing and ordering supplemental briefing, the District Court denied Stock's motion to dismiss.  Although the District Court concluded that a threat must evince an intent to injure in the present or

[3] To the extent that Stock initially suggested that his statement was protected by the First Amendment, App. at 65, he subsequently disclaimed that argument before the District Court, *id.* at 125, 254.  Stock also abandoned that issue in his Opening Brief by affirmatively directing us to avoid "grappl[ing] with the constitutional implications of the statements in the indictment."  Opening Br. at 26 n.5 (citations omitted); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (holding, where the appellant only suggested the existence of an issue "in passing in a short footnote in the[] opening brief, without argument or relevant citation," that the appellant had abandoned the issue on appeal); *United States v. Jongewaard*, 567 F.3d 336, 339 n.2 (8th Cir. 2009) (noting, where a defendant "expressly disclaims any challenge . . . under the First Amendment," that a court "need not address the question whether [the] statements . . . contained a true threat rather than constitutionally protected speech").  Indeed, we understand Stock's passing references to the First Amendment to make the reasonable point that because his statement is not a "threat" within the ordinary meaning of that word as it is used in 18 U.S.C. § 875(c), it cannot possibly be within the subset of "true threats" that are unprotected by the First Amendment. Opening Br. at 25; App. at 200-01 ¶ 1.

future, the court also determined that a reasonable jury could find that Stock's statement was a threat.

Stock then executed a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in which he generally waived his appellate rights, but specifically preserved his right to seek review of the District Court's denial of his motion to dismiss. The District Court accepted Stock's guilty plea and imposed a term of imprisonment of one year and one day and a term of supervised release of two years. Stock timely appealed.

## II.

The District Court had jurisdiction over Stock's case under 18 U.S.C. § 3231, and we have jurisdiction over his appeal under 28 U.S.C. § 1291.

We apply a mixed standard of review to a district court's decision on a motion to dismiss an indictment, exercising plenary review over legal conclusions and clear error review over factual findings. *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012). In this appeal, Stock attacks the sufficiency of his indictment, presenting a legal question over which we have plenary review. *United States v. McGeehan*, 584 F.3d 560, 565 (3d Cir. 2009), *vacated on other grounds*, 625 F.3d 159, 159 (3d Cir. 2010). In particular, Stock challenges the sufficiency of his indictment on the basis that the specific facts alleged therein fall outside the scope of the relevant criminal statute as a matter of statutory interpretation, and statutory interpretation is a legal question over which we have plenary review. *United States v. Zavrel*,

7

384 F.3d 130, 132 (3d Cir. 2004). Therefore, we exercise plenary review over this appeal.

## III.

In this appeal, both parties ascribe errors to the District Court's opinion. The Government argues that the indictment is facially sufficient and that the term "threat" in § 875(c) does not include a temporal element. Stock, in turn, asserts that the issue of whether his statement is a threat is a question of law and that his statement does not express an intent to injure in the present or future. We address these points below.

## A.

In reviewing Stock's motion to dismiss, the District Court considered whether the word "threat" in § 875(c) contains a temporal component. The Government argues that this analysis was unnecessary because Stock's indictment is facially sufficient. We disagree.

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." It is true that "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Huet*, 665 F.3d at 594-95 (emphasis omitted) (quotation omitted). A facially sufficient indictment "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and

(3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Id.* at 595 (quotation omitted). Usually, a recitation of the statutory language satisfies the first requirement, "so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *Id.* (quotation omitted). And typically, a factual orientation that includes a specification of the time period of the alleged offense is sufficient for the second and third requirements. *Id.* In short, "detailed allegations" are unnecessary. *Id.* at 594.

Under Rule 12(b)(3)(B), a defendant may contest the sufficiency of an indictment on the basis that it "fails . . . to state an offense" in at least two ways. First, a defendant may contend that an indictment is insufficient on the basis that it does not satisfy the first requirement in that it "fails to charge an essential element of the crime." *Huet*, 665 F.3d at 595 (citation omitted). Second, because an indictment that merely "recites in general terms the essential elements of the offense" does not satisfy the second and third requirements, a defendant may also claim that an indictment fails to state an offense on the basis that "the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter

9

of statutory interpretation."[4]  *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002).

The Government asks us to ignore the statutory interpretation issue because, according to the Government, the indictment is facially sufficient.  The Government relies on *Huet*, in which we were asked to decide whether a district court may find facts in ruling on a motion to dismiss an indictment for failure to state an offense under Rule 12(b)(3)(B).  Responding in the negative, we reversed the district court's dismissal of the indictment, which we concluded was facially sufficient.

However, *Huet* is distinguishable because the "only potential question of statutory interpretation" in that case was "not at issue on appeal."  665 F.3d at 597 n.7.  For that reason, we had no need to address "whether the facts alleged in the indictment f[e]ll beyond the scope of the relevant criminal statute as a matter of statutory interpretation."  *Id.* at 597 (citing, *inter alia*, *Panarella*, 277 F.3d at 685).

---

[4] A court's review of a motion to dismiss an indictment "is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury."  *Bergrin*, 650 F.3d at 268.  The court's ruling "is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence."  *Id.* at 265 (quotation omitted).  Thus, the court determines "whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict."  *Id*. at 268 (citation omitted).

Nonetheless, we reaffirmed that a defendant may attack the sufficiency of an indictment on that basis. *Id.* at 595.

Here, Stock is making the unmade challenge in *Huet* – namely, that "as a matter of law, the indictment fails to state an offense," Opening Br. at 13, because "the statements alleged in the indictment are not 'threats' and thus fall beyond the scope of 18 U.S.C. § 875(c)," *id.* at 12. Our precedent has recognized such attacks as an appropriate, alternative way in which to challenge the sufficiency of an indictment. *See McGeehan*, 584 F.3d at 565 ("The sufficiency of an indictment may be challenged *not only* on the basis that it fails to charge the essential elements of the statutory offense, *but also* on the ground that 'the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" (emphasis added) (quoting *Panarella*, 277 F.3d at 685)). Thus, the District Court did not err in considering whether the term "threat" in § 875(c) includes a temporal element, a question to which we now turn.

B.

The District Court concluded that the word "threat" in § 875(c) means an "'express[ion of] an intention to inflict injury at once or in the future.'" App. at 10 (quoting *Zavrel*,

11

384 F.3d at 136).[5]  The Government counters that, under controlling precedent, the term "threat" in § 875(c) is "a

---

[5] We agree with the Government that the District Court incorrectly concluded that we adopted a definition of the term "threat" in *United States v. Zavrel*, 384 F.3d 130 (3d Cir. 2004).  There, we reviewed a district court's denial of a defendant's motion for judgment of acquittal, considering whether the mailing of a substance resembling anthrax constituted a communication containing a "threat" under 18 U.S.C. § 876(c).  The defendant argued that her communications were immediately, not prospectively, harmful, and that threats were limited to prospective, not immediate, harm.  We observed that the district court had defined the word "threat" as:

> "[A] serious statement or communication which expresses an intention to inflict injury at once or in the future as distinguished from idle or careless talk, exaggeration or something said in a joking manner.  A statement or communication is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement or receiving the communication would understand it as a serious expression of an intent to inflict injury."

12

statement made by a speaker who 'means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group.'" Response Br. at 28 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). We hold that the word "threat" in § 875(c) encompasses only communications expressing an intent to inflict injury in the present or future.

The Government's proffered definition of the word "threat" is pulled from precedent concerning whether certain communications constitute "true threats" unprotected by the First Amendment. The Supreme Court's true threat jurisprudence originated in *Watts v. United States*, 394 U.S. 705 (1969) (*per curiam*). There, the defendant was charged with making a "threat" to harm the president in violation of 18 U.S.C. § 871(a). In reversing the denial of the defendant's motion for judgment of acquittal, the Court instructed that a statute that "makes criminal a form of pure speech[] must be interpreted with the commands of the First Amendment clearly in mind." *Id.* at 707. Thus, the Court held that a threat statute may criminalize only "a true 'threat,'" *id.* at

---

*Id.* at 136 (quotation omitted). Although "[w]e believe[d] this to be the correct approach," we declined "to decide the issue definitively," because even if we accepted the defendant's assertion that a threat must relate to future harm, we determined that the defendant's communications did threaten future harm. *Id.* Thus, we did not resolve in *Zavrel* whether the term "threat" in a federal threat statute includes a temporal element.

13

708, which "must be distinguished from . . . constitutionally protected speech," *id.* at 707.

Contrary to the Government's contention, the definition of the word "threat" and the definition of the phrase "true threat" are not co-extensive. To be sure, *Watts* taught us to interpret threat statutes in light of the First Amendment. But by distinguishing a "true threat" from a "threat" that would otherwise fall within the scope of a statute were it not protected by the First Amendment, *Watts* shows that "true threats" are a specific subset of "threats." Thus, the plain meaning of a "threat" under § 875(c) is distinct from the constitutional meaning of a "true threat" under the First Amendment.[6] *See United States v. Jongewaard*, 567 F.3d 336, 339 & n.2 (8th Cir. 2009) (noting that because the defendant argued that § 875(c), not the First Amendment, required that a communication be made to achieve a goal through intimidation in order to constitute a threat, the court did not need to address the question of whether the statement constituted a true threat); *United States v. Alkhabaz*, 104 F.3d 1492, 1493 (6th Cir. 1997) (concluding that "the indictment failed, as a matter of law, to allege violations of Section 875(c)," and accordingly declining "to address the First Amendment issues raised by the parties"); *United States v. Havelock*, 664 F.3d 1284, 1304 n.1 (9th Cir. 2012) (*en banc*)

---

[6] For this reason, we will not rely on the definition of a "true threat" as "a serious expression of an intention to inflict bodily harm" that we adopted in *United States v. Kosma*, 951 F.2d 549, 557 (3d Cir. 1991) (emphasis omitted) (quotation omitted).

14

(Reinhardt, J., concurring in part and dissenting in part) (explaining that because the communications "were not a threat in any sense of the word," there was no need to "reach the [First Amendment] question").

The Government also claims that the ordinary meaning of the word "threat" in § 875(c) does not contain a temporal component. Section 875(c) prohibits the "trans[mission] in interstate . . . commerce [of] any communication containing . . . any threat to injure the person of another." The term "threat" was not defined by congress in § 875(c) or in any of the related federal threat statutes. *See generally* 18 U.S.C. §§ 871-880.

Our interpretation of the word "threat" in § 875(c) begins with an inquiry into "whether the language used has a plain and unambiguous meaning with regard to the particular dispute in the case." *Zavrel*, 384 F.3d at 133 (quotation omitted); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (citation omitted)). When § 875(c) was last amended in 1994, one definition of the term "threat" expressly included a temporal element. *See* Black's Law Dictionary 1480 (6th ed. 1990) ("The term, 'threat' means an avowed present determination or intent to injure *presently or in the future*." (emphasis added)). While other definitions did not do so explicitly, *see*, *e.g.*, *id.* ("[A threat is a] communicated intent to inflict physical or other harm on any person or on property."), they did so implicitly by defining "threat" with reference to the speaker's "intent," which is an inherently

15

prospective concept, *see id.* at 810 (defining the word "intent" as "[a] state of mind in which a person seeks to accomplish a given result through a course of action"). Thus, the plain meaning of the word "threat" in § 875(c) suggests that it is confined to communications expressing an intent to injure in the present or future.

This conclusion is confirmed by a consideration of the "placement and purpose" of the term "threat" in § 875(c). *Zavrel*, 384 F.3d at 134 (quotation omitted). Turning to the placement of the word "threat," the Government argues that Congress criminalized "any threat," which includes past as well as present and future threats. The Government cites cases from two other courts of appeals adopting an expansive understanding of the noun "threat" based on the adjective "any." In *United States v. Jeffries*, the Sixth Circuit held that a music video was a threatening communication under § 875(c) because "the statute covers 'any threat,' making no distinction between threats delivered orally (in person, by phone) or in writing (letters, emails, faxes), by video or by song, in old-fashioned ways or in the most up-to-date." 692 F.3d 473, 482 (6th Cir. 2012). And in *Jongewaard*, the Eighth Circuit held that a threatening communication under § 875(c) need not be made to effect some change through intimidation because the phrase "any threat" "criminalizes a broad spectrum of threats to injure the person of another." 567 F.3d at 340.

*Jeffries* and *Jongewaard* do not advance the Government's argument for several reasons. First, neither the Sixth Circuit nor the Eighth Circuit analyzed whether the word "threat" in § 875(c) contains a temporal component,

16

since the communications in those cases were expressly prospective. *Jeffries*, 692 F.3d at 475-77; *Jongewaard*, 567 F.3d at 338. Second, and more significantly, the adjective "any" can broaden the scope of the noun "threat" to its natural boundary, but not beyond. *Alkhabaz*, 104 F.3d at 1495 ("To emphasize the use of the term 'any' without acknowledging the limitation imposed by the term 'threat' ignores the intent of Congress."). And third, *Jeffries* and *Jongewaard* lend some support to an interpretation limiting the term "threat" to communications revealing an intent to injure in the present or future by demonstrating that such a definition would "not render the word 'any' superfluous." *Havelock*, 664 F.3d at 1291 (citing *Duncan v. Walker*, 553 U.S. 167, 174 (2001)). Thus, the placement of the word "threat" within § 875(c) does not counsel an interpretation contrary to the plain meaning of that term.

Pushing on to the purpose of § 875(c), the Government voices two concerns about cabining the word "threat" to its plain meaning. The Government first points out that the purpose of the true threat exception to the First Amendment is to "protect[] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." Response Br. at 30 (quoting *Jeffries*, 692 F.3d at 478). But even if the purposes of § 875(c) are identical to the purposes of the true threat exception to the First Amendment, one of those purposes is expressly prospective. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992) (explaining that the reason true threats are outside the First Amendment is to protect people "from the possibility that the threatened violence *will occur*"

17

(emphasis added)).  With respect to the other two purposes, a communication demonstrating an intent to injure in the past may excite some fear of violence and may engender some disruption from that fear.  But the quantum of fear and the level of disruption experienced by the victim would usually be less for an expression of an intent to injure in the past than in the present or future.  For example, it seems uncontroversial that the statement, "I tried to murder you yesterday, but I will never do so again," would normally provoke less fear and disruption than the statement, "I will murder you tomorrow."

The Government further posits that because we apply an objective test to determine whether a communication is a true threat, *United States v. Kosma*, 951 F.2d 549, 557 (3d Cir. 1991), under which the speaker need only have a general intent to communicate his statement, *United States v.*

18

*Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994),[7] "it cannot matter when, in a temporal sense, the defendant intended to injure the victim," Response Br. at 32.  Again assuming the applicability of the true threat test to the definition of the term "threat," the sender's intent would normally be indiscernible to a reasonable recipient, while the retrospective or prospective nature of the message would typically be obvious to a reasonable recipient.  Thus, the purposes of § 875(c) do not conflict with the plain meaning of the word "threat."

---

[7] In *Virginia v. Black*, the Supreme Court stated that "'[t]rue threats' encompass those statements where *the speaker means to communicate* a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."  538 U.S. 343, 359 (2003) (emphasis added) (citations omitted).  Some courts of appeals have suggested that this language establishes a new subjective standard under which the speaker must have the specific intent that his statement be threatening, *see*, *e.g.*, *United States v. Bagdasarian*, 652 F.3d 1113, 1116-18 (9th Cir. 2011); *United States v. Parr*, 545 F.3d 491, 498-500 (7th Cir. 2008), while others have reaffirmed the traditional objective standard, *see*, *e.g.*, *United States v. Nicklas*, 713 F.3d 435, 439-40 (8th Cir. 2013); *United States v. Jeffries*, 692 F.3d 473, 479-81 (6th Cir. 2012); *United States v. White*, 670 F.3d 498, 508-12 (4th Cir. 2012).  Although we have continued to apply the objective test, *see*, *e.g.*, *Zavrel*, 384 F.3d at 135-37, we have not yet considered whether *Black* called into question our precedent on the issue, and Stock does not ask us to do so here.

19

Our interpretation of the term "threat" in § 875(c) is also consistent with the reasoning of the other courts of appeals that have addressed this issue. For example, in *Havelock*, the defendant was convicted of mailing, a half hour before opening kickoff, communications threatening to injure spectators at the Super Bowl, in violation of 18 U.S.C. § 876(c). On appeal, the defendant argued that the district court erred in denying his motion to dismiss on the basis that the indictment alleged insufficient facts to state an offense "because the communications did not threaten to injure immediately or in the future, but instead contained a 'post-mortem confession or explanation of his actions, which never came to fruition,'" and so "were devoid of a 'threat to injure.'" 664 F.3d at 1288. A three-judge minority, concurring in the majority's judgment, but dissenting from its rationale for reversing the convictions,[8] determined that the word "threat" is "by definition prospective," *id.* at 1305 (Reinhardt, J., concurring in part and dissenting in part) (citation omitted), because that term is defined as "an 'indication of impending danger or harm,'" *id.* (quoting *United States v. Davila*, 461 F.3d 298, 302 (2d Cir. 2006)).

---

[8] The defendant also argued that the district court erred in denying his motion to dismiss on the basis that the indictment alleged insufficient facts to state an offense because the word "person" in § 876(c) referred only to natural people and the alleged communications were addressed to corporations. Because the majority reversed the convictions on this basis, it did not address the defendant's alternative argument.

20

In other words, the minority would have ruled that threats "may include announcements of future or impending action, but not statements regarding past events or retrospective harm." *Id.* According to the minority:

> "Having deposited the [communications] in a United States Postal Service mailbox on the very day of the Superbowl, a mere thirty minutes before his intended rampage at the stadium, [the defendant's] [communications] could not have reached [their] intended destinations in time to put the recipients in fear of imminent danger or to constitute a threat of future action."

*Id.* at 1305-06. For this reason, the minority would have held that the communications "did not contain a threat." *Id.* at 1307.

Further, in *United States v. Landham*, 251 F.3d 1072 (6th Cir. 2001), the Sixth Circuit reached the same result, albeit under a true threat analysis. There, the defendant was convicted of, *inter alia*, transmitting a threat in interstate commerce in violation of § 875(c) based on his statement, "*I've done* more to you with a Parker 51 than what happened to your father with a goddamn Taurus five-shot." *Id.* at 1082 (emphasis added). On appeal, the defendant argued that the district court erred in denying his motion to dismiss the indictment because the alleged statement was not a true threat. Reasoning that it was "self-evident that [the defendant] [wa]s referring to damaging remarks he had previously made by transmitting written communications,"

21

the Sixth Circuit determined that the alleged statement "refer[red] to past conduct, not present or future conduct." *Id.* Thus, the Sixth Circuit concluded that the statement was "not a 'communication containing a threat,'" and held that "the indictment failed, as a matter of law, to allege a violation of § 875(c)."[9] *Id.* Based on our own statutory interpretation and this persuasive authority, we hold that the term "threat" in § 875(c) refers to the expression of an intent to inflict injury in the present or future.[10]

## C.

Notwithstanding the District Court's adoption of Stock's preferred definition of the word "threat," the court determined that the case "d[id] not turn on the statutory construction of section 875(c)," because "a reasonable jury could conclude that the communication posted by Defendant on Craigslist constituted a threat." App. at 13 (citing *Huet*, 665 F.3d at 596). According to Stock, this conclusion was

---

[9] As an alternative basis for its holding, the court reasoned that "even if the statement were a veiled threat, it was not an intent to inflict bodily harm" because "[a] Parker fifty-one is a fountain pen." *United States v. Landham*, 251 F.3d 1072, 1082 (6th Cir. 2001).

[10] The parties cite countless cases to support their competing definitions, some of which include, and others of which do not include, a temporal element. We find these cases, which do not directly address the issue, to be of little value here.

erroneous because "[a] determination of whether the facts set forth in the indictment are 'threats' as used in § 875(c) presents a question of law, not a question of fact for a jury." Opening Br. at 24 (citations omitted).[11]  Although we hold that a court may conclude that a communication does not constitute a threat as a matter of law in certain cases, we are also satisfied that the District Court recognized its ability to do so here.

In the usual case, whether a communication constitutes a threat or a true threat "is a matter to be decided by the trier of fact." *Kosma*, 951 F.2d at 555 (citations omitted); *see also United States v. White*, 670 F.3d 498, 512 (4th Cir. 2012); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008); *United States v. Floyd*, 458 F.3d 844, 848-49 (8th Cir. 2006); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999); *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994). Nonetheless, "[a] few cases may be so clear . . . that they can be resolved as a matter of law." *Kosma*, 951 F.2d at 555 (quoting *United States v. Merrill*, 746 F.2d 458, 462-63 (9th

---

[11] In the Government's view, "Stock fails to develop this argument and, therefore it is waived." Response Br. at 25 (citation omitted).  We disagree.  Stock's argument is supported by citations to five cases and takes up a full page of the argument section of his brief.  *See* Opening Br. at 24-25; *cf. United States v. Rawlins*, 606 F.3d 73, 82 n.11 (3d Cir. 2010) (determining that a challenge was waived where it was suggested in the statement of issues section of a brief but was not developed in the argument section of the brief).

Cir. 1984)); *see also Viefhaus*, 168 F.3d at 397; *Malik*, 16 F.3d at 51.

It is not unprecedented for a court to conclude that a communication does not legally qualify as a threat or a true threat. Indeed, in *Watts*, the Supreme Court held as a matter of law that the defendant's statement was merely "political hyperbole" that did not fit within the definition of the phrase "true 'threat.'" 394 U.S. at 708. Additionally, in *Landham*, the Sixth Circuit reversed the district court's denial of the defendant's motion to dismiss, concluding that "the indictment failed, *as a matter of law*, to allege a violation of § 875(c)" since the alleged statement was "not a 'communication containing a [true] threat.'" 251 F.3d at 1082.

Especially relevant is the decision in *Alkhabaz*, where the Sixth Circuit affirmed the district court's dismissal of the indictment charging the defendant with violations of § 875(c). Ruling that a communication cannot constitute a threat unless it is made to achieve a goal through intimidation, and reasoning that the defendant's messages did not satisfy this requirement, the court concluded that those messages "d[id] not constitute 'communications containing a threat' under Section 875(c)." 104 F.3d at 1496. Thus, the Sixth Circuit held that the indictment "fail[ed] to set forth . . . all the elements necessary to constitute the offense intended to be punished and [had to] be dismissed as a matter of law." *Id.* (emphasis omitted) (quotation omitted). In light of this precedent, we reaffirm that a court may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the alleged communication

24

constitutes a threat or a true threat. *See Huet*, 665 F.3d at 596.

Here, the record reflects that the District Court clearly recognized its authority to dismiss the indictment as a matter of law. App. at 13 ("The Court does not foreclose the possibility that an indictment charging an individual with a violation of section 875(c) may 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation' if the 'specific facts' charged in such an indictment are clearly deficient." (quoting *Huet*, 665 F.3d at 595)). The District Court simply declined to exercise this authority because it determined that "reasonable jurors could certainly conclude that these statements constitute 'a serious statement or communication which expresses an intention to inflict injury' on JKP 'at once or in the future.'" *Id.* at 15 (quoting *Zavrel*, 384 F.3d at 136). We agree that, based on this underlying determination, the District Court properly concluded that the question necessarily became one of fact for the jury to resolve. The propriety of the District Court's underlying determination is the final issue we now address.

## D.

The District Court determined that "a reasonable jury could conclude that the communication posted by Defendant on Craigslist constituted a threat" based on a consideration of the alleged statement "as a whole, and in the context in which the statements were made." App. at 13 (citing *Huet*, 665 F.3d at 596). Stock, however, claims that, "viewed in its

25

entirety,"[12] the alleged posting reveals only "statements that describe past conduct with an intent to harm, followed by a statement indicating a resignation or abandonment of purpose, followed, in turn, by expressions of ill wishes and hopes," and does not evidence an intent to injure in the present or future. Opening Br. at 21. We conclude that a reasonable jury could find that the posting, in context and as a whole, constitutes a threatening communication.

At the outset, Stock contends that the District Court erred in "assum[ing] the truth not just of the making of the statement, but of the content of the statement."[13] Opening Br.

[12] Normally, we look at the context and totality of a communication to determine whether it constitutes a true threat outside the protection of the First Amendment. *See United States v. Fullmer*, 584 F.3d 132, 154 (3d Cir. 2009). Nonetheless, Stock adopts this test in asserting that the posting does not constitute a threat within the meaning of § 875(c). *See* Reply Br. at 5 ("[V]iewed in their entirety and in context, the statements in the indictment fall beyond the scope of 18 U.S.C. § 875(c)."). We agree that this standard, which is irrelevant to the definition of the phrase "true threat" but relevant to the test of whether a communication meets that definition, is the appropriate inquiry to apply in deciding whether Stock's posting is an expression of an intent to injure in the present or future.

[13] Again, the Government insists that Stock waived this argument by neglecting to develop it. Response Br. at 25. Again, we disagree. *See* Opening Br. at 26-27; *cf. Rawlins*, 606 F.3d at 82 n.11.

at 24.  In other words, Stock believes that the District Court erroneously assumed that he actually engaged in the conduct described in the first sentence of his posting.  "In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual *allegations* set forth in the indictment."  *Huet*, 665 F.3d at 595 (emphasis added) (citing, *inter alia*, *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)).  Here, the only fact alleged in the indictment was that Stock "posted a notice on Craig's List, an Internet web site, that contained [specific] statements."  App. at 50.  The description of certain conduct was part of the statement that Stock allegedly made, not a second factual allegation.  Thus, under normal circumstances, we would agree that, to the extent the District Court assumed that the communication was an admission of the conduct described therein, it did so in error.

Here, however, even if the District Court committed the alleged error, it is doubtful that the error affected the court's analysis.  As the court correctly observed, "an objective test is applied to determine whether the Defendant's statements constitute a threat under section 875(c)."  App. at 14 (citations omitted); *see also Kosma*, 951 F.2d at 559.  Since Stock does not even argue that the statement was a joke or political hyperbole, it is obvious that a reasonable person would be entitled to believe not only that Stock made the statement, but also that the statement accurately described his conduct.  Thus, Stock's sole remaining claim of error is that the District Court incorrectly interpreted his statement.

According to Stock, his first sentence:

"i went home loaded in my truck and spend the past 3 hours looking for this douche with the expressed intent of crushing him in that little piece of shit under cover gray impala hooking up my tow chains and dragging his stupid ass down to creek hills and just drowning him in the falls,"

App. at 50 (emphasis omitted), "unambiguously refer[s] to a situation past and cannot amount to [a] threat[]," Opening Br. at 23 (citations omitted). We agree that this statement, by itself, reveals only an "expressed intent" to injure in "the past 3 hours," and so does not constitute a threat. *See Landham*, 251 F.3d at 1082-83 (holding that a statement that refers only to past conduct does not constitute a true threat). But the first sentence does not stand alone; it provides context for the four sentences that follow. *See Watts*, 394 U.S. at 708 (considering whether a communication constitutes a true threat "in context"). And in the right context, an expression of an intent to injure in the past may be circumstantial evidence of an intent to injure in the present or future. *See United States v. Fullmer*, 584 F.3d 132, 156 (3d Cir. 2009) (holding that speech that "used past incidents to instill fear in future targets" constituted true threats when "viewed in context").

Stock argues that his second sentence, "but alas i can't fine that bastard anywhere," App. at 50 (emphasis omitted), "describes a resignation of purpose or abandonment of that [prior] intent," Opening Br. at 19. But Stock's suggested reading of this statement is only one possible interpretation. We believe that a jury could reasonably find, from his use of

28

the present tense in the second sentence together with his description of his past conduct in the first sentence, that Stock had not abandoned his prior intent, but that he still harbored a present intent that he was unable to fulfill at that time. *See Himelwright*, 42 F.3d at 782 (explaining that a determination of whether statements constitute true threats does not depend on the speaker's "ability at the time to carry out the threats" (citations omitted)).

This alternative understanding of the second sentence becomes even more reasonable in light of the last three sentences: "i really wish he would die, just like the rest of these stupid fucking asshole cops. so J.K.P. if you read this i hope you burn in hell. i only wish i could have been the one to send you there." App. at 50 (emphasis omitted). These three sentences confirm that at the time Stock made the posting, he still desired J.K.P.'s death. Moreover, in the context of the first and second sentences, a reasonable jury could have found that when he made the posting, not only did Stock desire J.K.P.'s death, but that if he found him, he would execute his intent, possibly by the means he had previously employed.

Stock asserts that this reading of the final three sentences is flawed for two reasons. First, he alleges that "[t]hese expressions do not suggest that Mr. Stock himself would harm J.K.P." Opening Br. at 20 (citations omitted). We have said that a significant factor in evaluating whether a communication is a true threat is whether a speaker identifies himself as the person who will inflict injury on another or whether the speaker merely suggests that harm will befall another by someone's hand. *See Kosma*, 951 F.2d at 554.

29

Here, Stock's statement that he wished he could have been the one to kill J.K.P. arguably implies that Stock would not be the one to do so. However, Stock's earlier statement that he was disappointed that he could not find J.K.P., arguably implies the opposite, namely, that if he could find J.K.P., he would be the one to kill him. Thus, a jury could reasonably find that Stock implicated himself as the person who would kill J.K.P. *See id.* at 554 n.8 (holding that a conditional threat may constitute a true threat).

Second, Stock claims that the final three sentences are "expressions of a hope and a wish that harm would come to J.K.P.," Opening Br. at 20, and that "[m]erely wishing[] or hoping that harm would come to another falls outside the scope of the statute," *id.* (quotation omitted). The authority on whether a wish can constitute a threat is divided. *Compare United States v. Christenson*, 653 F.3d 697, 701-02 (8th Cir. 2011) (rejecting the argument that simply expressing a wish that a person suffer harm cannot constitute a true threat) *with United States v. Daulong*, 60 F. Supp. 235, 236 (W.D. La. 1945) (holding that a federal threat statute "d[id] not penalize the imagining, wishing or hoping that the act w[ould] be committed by someone else"). Stock has offered no reason, and we can think of none, why a wish could not constitute a threat in the right context. Applying Stock's requested rule would be especially inappropriate here because, in the context of the first and second sentences, a reasonable jury could find that Stock did not simply wish that J.K.P. would suffer harm, but that he was prepared to commit the act himself.

30

Before concluding our discussion, we take this opportunity to comment on the unique procedural challenge posed by this particular case. While a court's review of a motion to dismiss under Rule 12(b)(3)(B) is limited to a consideration of the facts alleged in the indictment, *Huet*, 665 F.3d at 595-96, the court's determination of whether a statement constitutes a threat under § 875(c) is based on the context and totality of the communication, *Fullmer*, 584 F.3d at 154. Thus, "[a]lthough the Government is not required to set forth its entire case in the indictment," *Huet*, 665 F.3d at 595, it is at least "incumbent on the Government to make that context clear" in an indictment charging a violation of a threat statute, *Landham*, 251 F.3d at 1080. Here, we are satisfied that the Government included sufficient context in the indictment for the District Court to determine that a reasonable jury could find that Stock's statement expressed an intent to injure in the present or future.

IV.

For the reasons stated above, we will affirm the District Court's denial of Stock's motion to dismiss the indictment pursuant to Rule 12(b)(3)(B) for failure to state an offense under § 875(c).