NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3600
_____

UNITED STATES OF AMERICA,

v.

ERIC VANDERBECK,
                              Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(Crim. No. 3:15-cr-00165)
District Judge: Hon. Freda L. Wolfson

_____

Submitted under Third Circuit LAR 34.1(a)
July 11, 2017

Before: SMITH, *Chief Judge*, FUENTES, *Circuit Judge*,
and STARK,[†] *Chief District Judge*

(Filed: July 21, 2017)

_____

OPINION[*]
_____

_____

[†] Honorable Leonard P. Stark, Chief Judge of the United States District Court for the District of Delaware, sitting by designation.
[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

sSTARK, *Chief District Judge*.

Erik Vanderbeck ("Vanderbeck" or "Defendant") appeals his conviction for child pornography offenses. We will affirm.

I

A

Vanderbeck is a 47-year-old male who resided in Bayonne, New Jersey, during all relevant times. From 2011 to 2014, Vanderbeck used online messaging services to communicate with underage females, asking them to send him sexually explicit photographs and videos of themselves.

Law enforcement first learned of Defendant's activities in November 2013, when the mother of one of his victims located in Missouri intercepted what she believed to be a suspicious package addressed to her daughter. The intercepted package contained "a vibrator, a black t-shirt, a Ziplock storage bag, and a return envelope" that was addressed to Defendant's address in New Jersey. (App. at 937-38) Law enforcement interviewed the victim, who admitted that she had been engaging in sexually explicit email communications with Defendant since around October 2013. After obtaining the victim's consent, law enforcement assumed the victim's online identity for purposes of communicating with Defendant.

Thereafter, a Missouri state court judge signed a warrant to search Defendant's email account "for evidence of violations of . . . state sex offense statutes." (*Id.* at 939) The subsequent search executed pursuant to that warrant "revealed sexually explicit

2

communications between [Defendant] and several other minor females as far back as in or around 2011." (*Id.* at 940) Of these minor female victims, three – referred to as Amy, Casey, and Joanna – are most relevant to the issues here.

Amy began communicating with Defendant when she was 13 years old. In his communications with Amy, Defendant assumed the name "Bubba" and claimed to be in his early twenties. At Defendant's request, Amy sent pornographic images of herself, and Defendant sent Amy other pornographic images. Amy further complied with Defendant's request to share images of her performing sex acts on herself. When Amy attempted to end her contact with Defendant, Defendant refused, and threatened to "do something physical" to her if she stopped. (*Id.* at 588) He further threatened to post Amy's images on different websites and send them to her father.

Casey began communicating with Defendant in 2013 when she was 15 years old. With her, Defendant again used the pseudonym "Bubba," telling Casey he was 18 years old. During the course of their online communications, Casey sent Defendant several pornographic pictures of herself at Defendant's request.

Joanna began communicating with Defendant in 2014 when she was 15 years old. Defendant identified himself to Joanna as a 16-year-old girl named "Megan." When Joanna requested a picture to confirm Megan's identity, Defendant sent Joanna a picture of Amy. Eventually, Defendant introduced Joanna to Megan's 18-year-old brother, "Andrew." Andrew sent Joanna pornographic pictures, and – in response to Andrew's threats to post other pictures of her online – Joanna sent Andrew pornographic pictures.

3

The federal investigation into Vanderbeck's online activities began in April 2014. On June 26, 2014, federal postal inspectors obtained a search warrant for Defendant's email accounts. Subsequently, on June 30, 2014, postal inspectors interviewed two underage females who had engaged in sexually explicit online communications with Defendant.

Following these interviews and the search of Defendant's email accounts, postal inspectors obtained a warrant to search Defendant's residence. Inspectors executed the warrant on July 22, 2014. In the course of the search, inspectors seized an external hard drive, two internal hard drives, and a cell phone. A forensic review of these devices revealed 81 pornographic images of Amy, 29 pornographic videos of Amy, four pornographic images of Casey, one pornographic image of Joanna, and pornographic images of other minor victims. (*See* Presentence Investigation Report ("PSR") ¶ 30)

While the search of Defendant's residence was ongoing, two postal inspectors – Greg Kliemisch ("Kliemisch") and Ann Kolczynski ("Kolczynski") – along with Bayonne Police Department Detective Brian Borow, interviewed Defendant. The interview, which lasted approximately three hours, occurred in Kliemisch's vehicle. Kliemisch digitally recorded the interview. During the interview, Defendant admitted that he used his email address in the conversations with his victims and acknowledged that he assumed various identities during his online interactions with them. Defendant further admitted that he knew that Amy and Casey were minors when they sent him

pornographic images of themselves. Defendant also admitted that he distributed Amy's pictures when he was pretending to be Megan.

Kliemisch's recording did not capture anyone administering a *Miranda* warning to Vanderbeck before the interview began. Nor did the recording reflect anyone telling Defendant at any time that he was free to stop the interview and leave. However, Kliemisch, Kolczynski, and Borow testified at a suppression hearing that Kliemisch did, in fact, administer a *Miranda* warning, before the recorder was turned on at the start of the interview. All three agents further testified that Vanderbeck had waived his *Miranda* rights. This is also reflected in Kolczynski's investigative report, dated July 30, 2014, which states that Defendant was read and waived his *Miranda* rights prior to the start of the interview.

After the interview concluded, Defendant agreed to be taken for a polygraph test. When the polygraph test concluded, Defendant was arrested.

C

The case against Vanderbeck ultimately proceeded on a five-count superseding indictment charging him with three counts of production of child pornography, in violation of 18 U.S.C. § 2251(a); one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); and one count of possession of at least three images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Among the pretrial motions Defendant filed, two are pertinent to his appeal. Defendant moved to suppress the statements he made during the interview and also

5

moved to dismiss the indictment for lack of probable cause to support the warrant to search his residence. Following an evidentiary hearing, the District Court denied both motions.

Trial began on April 5, 2016. On April 7, the District Court granted the government's motion to dismiss Count One. On that same day, Vanderbeck moved for a mistrial, based on Joanna's testimony that Defendant's communications had driven her to contact a suicide hotline. The District Court denied Defendant's motion. On April 8, the jury found Defendant guilty of all remaining counts.

On September 12, 2016, the District Court sentenced Vanderbeck to 22 years in prison. He filed a notice of appeal on the same day.[1]

## II

Vanderbeck moved to suppress the statements he gave in the interview with law enforcement while the search of his residence was being conducted. He contends that the interview, which took place in a postal inspector's vehicle, was a custodial interrogation, yet he was not administered *Miranda* warnings prior to questioning.[2] At a hearing, the District Court heard the testimony of the two postal inspectors and one Bayonne police detective who had been involved in the interview. Finding the witnesses' testimony credible, the District Court determined that while Defendant had been in custody, he had

---

[1] The District Court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.
[2] Vanderbeck certified that he does not recall being read his rights, although he does not expressly deny that it occurred.

been given the required *Miranda* warnings and had waived his right to remain silent.[3] The Court denied the motion to suppress.

We review "the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found facts." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006). When the District Court's denial of a suppression motion is based on credibility determinations, the "fact-finder's determination of credibility is not subject to appellate review." *Gov't of Virgin Islands v. Gereau*, 502 F.2d 914, 921 (3d Cir. 1974), *abrogated on other grounds by Corley v. United States*, 556 U.S. 303 (2009); *see also United States v. Bethancourt*, 65 F.3d 1074, 1078, 1081 n.4 (3d Cir. 1995) ("Determining the credibility of witnesses is uniquely within the province of the trial court and this court will not review this determination.").

It is unnecessary for us to decide whether Vanderbeck was in custody because the District Court's finding that he was properly advised of his rights before questioning began, and waived those rights, is not clearly erroneous and is dispositive.[4] If he was not in custody, the *Miranda* warnings were unnecessary; if he was in custody, then his rights were protected by the administration of those warnings and his voluntary decision

---

[3] *See* App. at 142 (District Court stating "the testimony of Inspector Kliemisch [was] credible," "the *Miranda* warnings were indeed issued," and "I certainly find by well more than a preponderance of the evidence that [Defendant] was advised of his warnings").

[4] Factual determinations are clearly erroneous only if they "[are] completely devoid of minimum evidentiary support displaying some hue of credibility, [and] . . . bear[] no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972).

7

thereafter to answer questions. *See United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006) ("*Miranda*, of course, requires warnings only when the person the police are questioning is in custody."); *see also Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) ("We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."). The District Court found that all three officials involved in the interview testified credibly that Defendant was read his *Miranda* rights by Inspector Kliemisch before the questioning (and the recording) began, and that Defendant then waived his rights and agreed to answer questions. We will not disturb these credibility findings on appeal. *See Gereau*, 502 F.2d at 921 ("It is the law of this Circuit, as well as many others, that a fact-finder's determination of credibility is not subject to appellate review.").[5]

Accordingly, the District Court properly denied Defendant's motion to suppress.

III

Vanderbeck challenges the District Court's denial of his motion to dismiss the indictment based on the purported lack of probable cause to support the search warrant for his residence. In Defendant's view, probable cause was lacking because none of his victims could "identify[] him with sufficient precision to satisfy the veracity and reliability requirements for [g]overnment informants." (Appellee Br. at 19)

---

[5] Other record evidence supports the testimony the District Court credited. For example, Inspector Kolczynski documented that Defendant was read and waived his *Miranda* rights prior to the interview. Inspector Kliemisch explained that the audio recording failed to capture the *Miranda* warning because he had never before audio recorded an interview.

8

"We apply a mixed standard of review to a district court's decision on a motion to dismiss an indictment, exercising plenary review over legal conclusions and clear error review over factual findings." *United States v. Stock*, 728 F.3d 287, 291 (3d Cir. 2013). With respect to the probable cause analysis, this Court "conduct[s] . . . a deferential review of the initial probable cause determination made by [a] magistrate [judge]." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). In reviewing the magistrate judge's probable cause determination, this Court's role is "to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The District Court properly denied Defendant's motion. Although styled as a motion to dismiss, Defendant's arguments could only properly have been made in a motion to suppress. *See United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008) ("[U]nder [Federal Rule of Criminal Procedure] 12, a suppression argument raised for the first time on appeal is waived (*i.e.*, completely barred) absent good cause. . . . [O]ur holding applies . . . where the defendant failed to file a suppression motion at all in the district court."); *see also United States v. Blue*, 384 U.S. 251, 255 (1966) ("Our numerous precedents ordering the exclusion of . . . illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether.").

Defendant's contentions likewise fail on the merits. Even assuming that his victims could not sufficiently identify him, and ignoring their statements, the remainder of the application for the search warrant amply supports a finding of probable cause to

believe that Vanderbeck's residence would contain evidence of child pornography offenses. As just some examples, the application referred to: the package containing "a vibrator, a black t-shirt, a Ziplock storage bag, and a return envelope" that was sent to a Missouri 14-year-old, with a return address label and return envelope with Vanderbeck's name and address in New Jersey; the several searches of Defendant's email communications, which "revealed sexually explicit email communications" between Defendant and his victims; and "[t]he results of grand jury subpoenas" to Defendant's email and internet providers, which "revealed that the email account [Defendant] used to communicate with [his victims] was registered to an IP address registered to [Defendant]" at the address that the application sought to search. (App. at 937-43)

Accordingly, the District Court properly denied Defendant's motion to dismiss.

IV

Vanderbeck's application for a mistrial arose from the testimony of one of his victims, Joanna. At the conclusion of her direct examination, Joanna stated that she had spoken with a suicide hotline regarding "Megan or Bubba," aliases that Defendant used in his communications with her. (*See* App. at 459-60) To Defendant, Joanna's testimony warrants a mistrial because it was unfairly prejudicial, "sway[ing] the jury to react on emotion." (App. at 491)

"We review the denial of a motion for a mistrial based on a witness's allegedly prejudicial comments for an abuse of discretion." *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005). "Our inquiry focuses on whether any conduct at trial was so

10

prejudicial that [the] defendant was deprived of a fundamental right." *United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir. 1993). In the present context, "[t]hree factors guide this inquiry: (1) whether [the allegedly prejudicial] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken by the district court." *Id.*; *see also United States v. Riley*, 621 F.3d 312, 336 (3d Cir. 2010) (same).

Applying these factors, it is clear that the District Court did not abuse its discretion in denying the request for a mistrial. Joanna's remarks were not pronounced and persistent; instead, they were made once at the very end of her testimony. The totality of the testimony is as follows:

> Q. Did you ever communicate with any adults in your life regarding Megan or Bubba?
>
> A. Yes, ma'am.
>
> Q. Who or when or what were the circumstances?
>
> A. On a suicide hotline.
>
> [Q.] I have no further questions for this witness, your Honor.

(App. at 459-60)

These few moments of testimony in the course of a four-day trial cannot be viewed as "pronounced and persistent," nor "systematic" and "permeat[ing] the proceedings with prejudice." *United States v. Morena*, 547 F.3d 191, 196-97 (3d Cir. 2008); *see also Riley*, 621 F.3d at 336 (finding remarks made twice "in testimony that

11

spanned three days over the course of a five week trial" were not pronounced and persistent).[6]

Turning to the strength of the other evidence, here, as in *Riley*, 621 F.3d at 337, "there is no question that the jury did not solely rely" upon Joanna's allegedly prejudicial testimony in rendering its verdict. To the contrary, the jury heard Defendant's own interview admissions that he had "solicited pornographic images" from his victims, known his victims were minors, and distributed his victims' pornographic images to others; heard from Defendant's victims that they had sent pornographic images of themselves to Defendant in response to his demands; and heard from investigators about the nearly 100 images of child pornography they had seized from Defendant's electronic devices. (*See* App. at 440-61, 482-83, 554-64, 567-611, 852, 863, 877) Plainly, "the strength of the other evidence is sufficient to outweigh any possible prejudice [that Joanna's] statement[] may have inflicted" on Vanderbeck. *Riley*, 621 F.3d at 337.

As for the third factor, Defendant declined the District Court's offer to provide a limiting instruction to the jury. In the final instructions, the jury was instructed not to decide the case based on sympathy and prejudice. *See generally Lore*, 430 F.3d at 207 ("[E]ven though Bohn declined the district court's offer to issue a specific curative

---

[6] Vanderbeck points out that during an earlier portion of Joanna's testimony, the District Court excused the jury, to allow Joanna time to "compose herself" after she seemingly burst into tears. (Reply Br. at 3) (internal quotation marks omitted) While the emotional nature of much of this victim's testimony may have been prejudicial to Vanderbeck, that fact does not transform Joanna's fleeting reference to a suicide hotline into "pronounced and persistent" remarks.

instruction at the time of [the allegedly prejudicial] statement, the court subsequently instructed the jury regarding the defendants' right to refrain from testifying.")).

Accordingly, the District Court did not abuse its discretion in denying Defendant's motion for a mistrial.

V

For the reasons given above, the District Court's opinion is affirmed in all respects.