**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1720
_____

UNITED STATES OF AMERICA

v.

MEHDI NIKPARVAR-FARD
a/k/a Mehdi Armani,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-17-cr-00513-001).
District Court Judge: Honorable Jan E. DuBois
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
March 11, 2019
_____

Before: McKEE, ROTH, and PORTER, *Circuit Judges*

(Opinion filed: July 23, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

Appellant Mehdi Nikparvar-Fard appeals his conviction for making threats against a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B), and for making false statements in violation of 18 U.S.C. § 1001. For the following reasons, we will affirm the district court.[1]

Nikparvar-Fard presents four issues on appeal: (1) that U.S. Marshals are not law enforcement officers under 18 U.S.C. § 115(a)(1)(B) and therefore his conviction for threatening a law enforcement officer should not stand; (2) that the district court erred in admitting his threatening statement because he was in custodial interrogation at the time and had not been read his *Miranda* rights; (3) that the district court erred in declining to redact, from the transcript of his interaction with the Marshals that was shown to the jury, the racial and homophobic slurs Nikparvar-Fard used; and (4) that the court erred in restricting Nikparvar-Fard's expert witness from opining as to Nikparvar-Fard's intent.[2] As we explain below, each of these arguments fails.

---

[1] The district court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction over this appeal under 28 U.S.C. § 1291. *See, e.g., United States v. Stock*, 728 F.3d 287, 291 (3d Cir. 2013).

[2] Nikparvar-Fard's statutory argument regarding U.S. Marshals is subject to plenary review. *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007). His argument regarding his *Miranda* rights is reviewed for clear error as to the factual findings, but the district court's application of the law to those facts is reviewed *de novo*. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). Nikparvar-Fard's evidentiary arguments are reviewed for abuse of discretion. *See United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006) (Rule 404(b) challenge to admitted evidence); *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001) (admissibility of expert testimony).

18 U.S.C. § 115(a)(1)(B) makes it a crime to threaten a federal law enforcement officer while s/he is engaged in the performance of official duties.[3] Federal law enforcement officers are defined as "officer[s or] agent[s] . . . authorized by law . . . to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law."[4] U.S. Marshals, among other things, are authorized to investigate and "make arrests without warrant for any offense against the United States" or "any felony cognizable under the laws of the United States."[5] The Marshals plainly fit the definition of law enforcement officers under the statute and were engaged in official duties at the time of the threat, as required by the statute.

Second, Nikparvar-Fard contends that he was in custody when he made the threatening statements and had not been read his *Miranda* rights; therefore, his threatening statements should not have been admissible. The district court properly found that although Nikparvar-Fard was in custody at the time he made the threatening statements, he was not being interrogated.[6] When an officer asks a clarifying question to information voluntarily given by a suspect in custody that does not amount to a custodial interrogation.[7] "*Miranda* concerns are not implicated in follow-up questions to

---

[3] Section 115(a)(1) criminalizes: "threaten[ing] to assault, kidnap, or murder, a . . . Federal law enforcement officer . . . with intent to impede, intimidate, or interfere with such . . . law enforcement officer while engaged in the performance of official duties."

[4] 18 U.S.C. § 115(c)(1).

[5] 28 U.S.C. § 566.

[6] *United States v. Nikparvar-Fard*, No. CR 17-513, 2017 WL 6055289, at *3–4 (E.D. Pa. Dec. 7, 2017).

[7] *See, e.g., United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998) (holding that "statements made in response to a law enforcement officer's attempt to seek clarification

volunteered statements."[8] Moreover, assuming arguendo that Nikparvar-Fard was being interrogated, the Fifth Amendment does not protect against speech that is itself a crime.[9] Nikparvar-Fard did not admit to prior criminal acts, which the Fifth Amendment aims to protect, but rather committed a new crime by threatening the Marshal. The district court therefore correctly concluded that his statements were admissible.

The district court also did not abuse its discretion in declining to redact Nikparvar-Fard's use of racial and homophobic slurs from the transcript of Nikparvar-Fard's conversation with the Marshals. The question we must answer on review is whether "no reasonable person would adopt the district court's view" that the slurs could be relevant in determining Nikparvar-Fard's intent.[10] The Seventh and Tenth Circuit Courts of Appeals have decided in similar cases that racial slurs used by the defendant were relevant to determining whether an objective observer would view the statements at issue there as threats.[11] The jury had to decide the same here. Moreover, the district court

---

of a defendant's remarks, during an interview requested by the defendant, are not the products of interrogation") (internal quotation marks and citations omitted).

[8] *United States v. Rommy*, 506 F.3d 108, 133 (2d Cir. 2007).

[9] *See e.g., United States v. Mitchell*, 812 F.2d 1250, 1252–53 (9th Cir. 1987) ("A person who is detained illegally is not immunized from prosecution for crimes committed during his detention."); *Nikparvar-Fard*, 2017 WL 6055289, at *2–3 (collecting cases from the First, Second, Fifth, Seventh, Ninth, and Eleventh Circuits).

[10] *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010); *see also In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 453 (3d Cir. 1997) ("A ruling excluding evidence under Rule 403 is accorded particular deference, and, provided that the court has explained its ruling or the reasons for its ruling are otherwise apparent from the record, it may not be reversed unless the determination is arbitrary and irrational.") (internal quotation marks and citations omitted).

[11] *See United States v. Schweihs*, 971 F.2d 1302, 1314 (7th Cir. 1992) (finding the "racially derogatory remarks . . . were not always made in the context of relevant

mitigated any potential prejudice by very specific questioning of potential jurors in *voir dire* and the court dismissed jurors who stated they could not be objective in light of the language. The court also gave a limiting instruction that specified the only acceptable reason to consider the slurs was in determining whether Nikparvar-Fard intended the statements to be a threat or whether the statements were objectively threatening. Accordingly, the court did not abuse its discretion in declining to redact the language from the transcript.

Finally, Nikparvar-Fard's psychiatrist was appropriately only prevented from opining directly as to Nikparvar-Fard's intent. He was able to testify extensively as to Nikparvar-Fard's mental state and the effect that may have had on his interaction with the Marshals.[12] The district court correctly concluded that the defense expert may not "draw the ultimate inference or conclusion [about the defendant's *mens rea*] for the jury."[13]

Accordingly, for the reasons stated above, we will affirm the judgment of the district court.

---

discussions," but were "probative of [the defendant's] intent to instill fear in his victims."); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) (finding the racially inflammatory "evidence offered [was] clearly was probative of [the defendant's] state of mind and tend[ed] to counter his allegation of benign purpose.").

[12] The district court reviewed Nikparvar-Fard's expert's proposed testimony and allowed testimony that would not speak directly as to Nikparvar-Fard's intent.

[13] *United States v. Bennett*, 161 F.3d 171, 183 (3d Cir. 1998) (finding expert testimony admissible "if it merely supports an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.") (internal quotation marks and citations omitted).